## FEDERAL TRADE COMMISSION v. NATIONAL BISCUIT CO.

District Court, S. D. New York.

Feb. 16, 1937.

Lamar Hardy, U. S. Atty., of New York City, and Russell Hardy, Sp. Asst. to the Atty. Gen., for petitioner.

Davis, Polk, Wardwell, Gardiner & Reed, of New York City (John W. Davis, of New York City, of counsel), for respondent.

GODDARD, District Judge.

The Federal Trade Commission on September 2, 1936, filed a petition praying for an alternative writ of mandamus commanding the respondent, the National Biscuit Company, to furnish and file with the Federal Trade Commission, the petitioner.

certain information regarding its business. After notice to respondent and a hearing, the writ was issued on September, 16, 1936. The writ commanded the National Biscuit Company to show cause why it should not furnish the Federal Trade Commission with the information called for in certain blank forms, schedules, and questionnaires which were attached to and made a part of the writ. On the return of the writ, the respondent filed its answer and objections to the petition with its reasons for refusing to furnish the information, and the Commission filed and served its objections to respondent's answer and objections in the form of a general demurrer.

It appears from the papers filed that the Federal Trade Commission bases its authority and demand for the information sought on a Resolution passed by both Houses of Congress and approved by the President on August 27, 1935 (Public Resolution No. 61, 74th Congress [49 Stat. 929]) "Authorizing the Federal Trade Commission to make an investigation with respect to agricultural income and the financial and economic condition of agricultural producers generally," for the purpose of enabling Congress to consider whether new legislation should be enacted or existing legislation amended on any of the subjects referred to. The Resolution is somewhat lengthy and it is unnecessary to set it forth here in full. It required the Commission to make an investigation to ascertain the facts with regard to the causes of the unequal distribution between the farmer and others of the income from the principal farm products, particularly as to the existence of certain supposed causes of this condition which are described in the resolution as concentration of control, combinations and monopolies, price fixing and manipulation. Included in the preamble of the Resolution is the following: "Whereas it is charged that through the payment of high and excessive salaries and other devices said middlemen, warehousemen, processors, manufacturers, packers, and others escape just taxation by the United States that said salaries tend unduly to diminish the tax revenues of the United States and tend to burden and restrain interstate and foreign commerce in farm products, and to divert and conceal the earnings and profits of the concerns paying said salaries, and that by various devices those receiving said salaries escape their just share of Federal taxation," and the Commision was directed to investigate and report upon the salaries received by the officers of such companies and "The extent to which said corporations avoid income taxes, if at all, and the extent to which officers receiving such salaries paid income taxes thereon." Section 1, 49 Stat. 930.

On September 19, 1935, the Federal Trade Commission, purporting to act pursuant to the authority of this Resolution, resolved to "investigate and report at the next session of Congress" upon the matters referred to in the Resolution, and on February 4, 1936, the National Biscuit Company received from the Federal Trade Commission two questionnaires designated as Schedule A–7 and Schedule B. At the head of each of these schedules was the following:

"This schedule is called for under the terms of section 6 (a) of the Federal Trade Commission Act [15 U.S.C.A. § 46] copy of which is annexed, and of S. J. Resolution 9, 74th Congress, First Session, approved August 27, 1935, authorizing and directing the Federal Trade Commission to investigate and report at the next session of Congress the extent of the increases or decreases in recent years in the income of principal corporations engaged in the sale, manufacturing, warehousing, and/or processing of the principal farm products and of other principal sellers * * * compared with the decline in agricultural income including the amount and percentage of such changes, etc., copy of which is enclosed.

"Your attention is directed to section 10 of the Federal Trade Commission Act [15 U.S.C.A. § 50] providing penalties for false reports and for failure to file reports."

No charge of any violation of law by the National Biscuit Company was made in either of the questionnaires which was the only notice respondent received as to the subject and purpose of the inquiry.

The petition alleges and the return admits "that National Biscuit Company directly and through numerous corporations owned and controlled by it, has been purchasing, producing, manufacturing, selling, distributing transporting, and shipping, in, from, to and through the several States in and in connection with commerce among the States, substantial quantities of food products, farm products, and products made from farm products, that is to say, wheat flour, sugar, molasses, milk, butter, cheese,

eggs, raisins, peanuts, bread, biscuits, cakes, crackers, and other bakery products and other commodities to petitioner unknown." But in the return respondent alleges "that in addition to the business therein described a large and substantial portion of respondent's business, such as, the manufacturing and processing of the commodities and products which it sells and the sales of products within the confines of a single State, is purely intrastate in character and has no direct effect upon intrastate commerce or the interstate business conducted by respondent."

In its answer and objections to the petition, respondent alleges: "13. That the compulsory disclosure of the confidential information which petitioner seeks to exact from the respondent, including the dissemination in the trade of said information relating to respondent's business with particular customers and to respondent's total volume of business, would place respondent at a distinct disadvantage in competing with its business rivals and in dealing with its customers and would otherwise impose a great hardship on respondent in excess of the legitimate public purpose, if any, to be served by the disclosure of said information."

It is also alleged that respondent has been at all times and is now ready and willing to answer the questionnaires involved in this proceeding on the condition that the information in such answers would not be disclosed to the public or to competitors or customers of the respondent, but that the Federal Trade Commission has as yet been unable or unwilling to assure respondent that said information would be confidential.

The schedules received by the National Biscuit Company in substance called for the following information:

## "Schedule A-7.
### "(Bread and Bakery Products.)

"Question (1) The number of barrels of wheat floor purchased in the year 1935 from each of various types of distributors such as brokers, mill agents, wholesale grocers, jobbers, including own flour mills.

"Question (2) The names and addresses of the five principal companies in each group from whom you purchased wheat flour during the period reported in Question (1).

"Question (3) The amount of your purchases of wheat flour in the year 1935

in quantities and dollars from each of a list of companies including General Mills, Inc., Pillsbury Flour Mills and others, and then your purchases from all other companies, the total being your total wheat flour purchases in quantities and dollars.

"Question (4) The quantity of bread in pounds and the net dollar sales of all other bakery products sold in the year 1935 to each of various types of customers including chain stores, cooperative and voluntary chains, etc., and then sales to all other types of consumers, the total being your total sales of bread and all other bakery products in the year 1935.

"Question (5) The names and addresses of the five principal companies in each of certain groups of distributors to whom you sold wheat flour bread in the year 1935 and the amount of net sales in quantities and dollars sold to each."

On April 1, 1936, respondent supplied the Federal Trade Commission with the information requested in this schedule with the exception of that called for in questions (4) and (5).

## "Schedule B.
### "(Manufacturers and/or Processors of Farm Products.)

"Question (1) List of all subsidiary companies included in your report.

"Question (2) The quantity and dollar value of all wheat flour, other flour, wheat and other materials purchased in the year 1935 and the quantity and dollar value of the portion thereof resold without further processing:

"Question (3) Net sales of bread, flour and wheat in quantities and dollars and the net dollar sales of all other products for the year 1935 divided according to whether sold without further processing or whether manufactured or processed by you.

"Question 3 (A) Cost of products bought and resold without further processing or manufacturing and then your net cost of materials entering into manufactured products sold.

"Question (4) Names or predecessor companies whose data are included in following questions 5 to 9 inclusive:

"Question (5) Consolidated balance sheets of your company and subsidiaries for the years 1914, 1917, 1920, 1923 and 1926, and net sales for the same periods.

"Question (6) Amounts of capital stock and bonds at par value issued in each of

the years from 1914 to 1935 inclusive and the purpose for which the same were issued.

"Question (7) The amounts of additions to and deductions from surplus and the causes thereof in detail in each of the years 1914 and 1935 inclusive.

"Question (8) Consolidated Assets and Liabilities in detail including all subsidiary companies, controlled companies and predecessor companies for the years 1928 to 1935 inclusive.

"Question (9) Consolidated Income and Expense Statements in detail including all subsidiary companies, controlled companies and predecessor companies for the years 1929 to 1935 inclusive.

"Question (10) Name, position, annual cash salary and other compensation paid to each officer of the corporation for the years 1929 to 1935 inclusive."

On May 8, 1936, respondent returned to the Federal Trade Commission Schedule B, having answered all the questions in that schedule except questions (3), (3A), (5), and so much of question (9) as called for information with respect to the amount of total sales and total cost of goods sold, and question (10).

The respondent contends that the compulsory disclosure of information now demanded would constitute an unreasonable search and seizure in violation of the Fourth Amendment of the Constitution of the United States; that the Congress has not authorized the Federal Trade Commission to demand, or this court to compel the disclosure of this information involved in this proceeding; also that the questions which respondent have not answered have no direct connection with interstate commerce or with any violation of law, and that the questions concern respondent's intrastate as well as its interstate activities.

The respondent also takes the position that from the Commission's refusal to assure respondent that any of this information now sought will be used confidentially, it is to be inferred that the Commission will, or at least is likely, to publish all of it, and that respondent knows of no means of preventing the Commission from doing so, if it obtains the information.

Taking up first the question whether Congress has authorized the Commission to compel the disclosures to be made. Section 4 of the Joint Resolution (49 Stat. 931) provides: "For the purpose of carrying out

this resolution the Federal Trade Commission, the Attorney General, and the courts of the United States shall have and may exercise all of the powers and jurisdiction severally conferred upon them by the Act entitled 'An Act to create a Federal Trade Commission, to define its powers and duties, and for other purposes', approved September 28 [26], 1914."

Section 6 (a, b) of the Federal Trade Commission Act (15 U.S.C.A. § 46 (a, b) provides that it shall have power—

"*Investigation of corporations.* (a) To gather and compile information concerning, and to investigate from time to time the organization, business, conduct, practices, and management of any corporation engaged in commerce excepting banks and common carriers subject to the Act to regulate commerce, and its relation to other corporations and to individuals, associations, and partnerships.

"*Reports by corporations.* (b) To require, by general or special orders, corporations engaged in commerce, excepting banks, and common carriers subject to the Act to regulate commerce, or any class of them, or any of them, respectively, to file with the commission in such form as the commission may prescribe annual or special, or both annual and special, reports or answers in writing to specific questions, furnishing to the commission such information as it may require as to the organization, business, conduct, practices, management, and relation to other corporations, partnerships, and individuals of the respective corporations filing such reports or answers in writing. Such reports and answers shall be made under oath, or otherwise, as the commission may prescribe, and shall be filed with the commission within such reasonable period as the commission may prescribe, unless additional time be granted in any case by the commission."

Section 9 of the act (15 U.S.C.A. § 49) in the fourth paragraph provides: "Upon the application of the Attorney General of the United States, at the request of the commission, the district courts of the United States shall have jurisdiction to issue writs of mandamus commanding any person or corporation to comply with the provisions of this subdivision of this chapter or any order of the commission made in pursuance thereof."

Respondent takes the position that the power of the Commission to compel information must therefore be limited to disclo-

sures relating to breaches of the law which occur in or which directly affect interstate commerce. This, I think, is not so. On the contrary, it seems to me that the Joint Resolution reflects the intention of the Congress to authorize the Commission to exercise similar powers for the purpose of securing the desired information relevant to the various named subjects on which legislation is contemplated. Unless the Congress intended to give the Commission additional power for the purpose of securing the information, section 4 of the Joint Resolution was unnecessary, for the Commission already had authority to demand the facts relating to a breach of the law.

It was alleged in the petition and admitted in the petition that respondent was engaged in interstate commerce in a substantial degree in the various commodities.

The Fourth Amendment to the Constitution of the United States is not violated by Congress conducting an inquiry and compelling the production of testimony concerning matters on which it is essential that Congress be informed in order to frame legislation. McGrain v. Daugherty, 273 U. S. 135, 47 S.Ct. 319, .71 L.Ed. 580, 50 A.L. R. 1.

The Joint Resolution stated "that the Congress should consider whether new legislation should be enacted or existing legislation amended on any of the subjects hereinbefore described and in aid thereof should be informed on all of said subjects." 49 Stat. 929, 930.

Certainly burdens on interstate commerce, monopolies, and taxation referred to in the Joint Resolution, are subjects under the control of the Congress and upon which it is entitled to information. It is true that the facts requested do include some information regarding respondent's activities that are not solely interstate, but the presumption is that the Congress intends to make use of all the facts obtained in aid of legislation affecting interstate commerce only. In the judgment of the Congress the information requested does directly relate to interstate commerce and lack of such relation is not so clearly nonexistent as to justify the court in saying to the contrary. This is a matter for the Congress to decide, at least in the first instance. Stafford v. Wallace, 258 U.S. 495, 521, 42 S.Ct. 397, 403, 66 L.Ed. 735, 23 A.L.R. 229.

To support its position respondent relies largely upon Federal Trade Commission v. American Tobacco Co., 264 U.S. 298, 44 S.Ct. 336, 68 L.Ed. 696, 32 A.L.R. 786. But in that case the question was—Has the Federal Trade Commission an unlimited right to obtain the books and records of a corporation with reference to a possible existence of unfair competition in violation of the Federal Trade Commission Act? Any question regarding the power of the Congress to obtain information for legislation purposes was eliminated, and the writs of mandamus seem to have been denied on the ground that the demands were too broad and not only included records and papers that were relevant, but those which clearly were not. In the case at bar the demand is for information deemed by the Congress to be relevant to future legislation on subjects within its jurisdiction.

Accordingly, I think the writ of mandamus must be allowed.