UNITED STATES of America,
Petitioner,

v.

Leslie W. WOERTH, Respondent.

Civ. A. No. 877.

United States District Court
N. D. Iowa, W. D.

May 6, 1955.

F. E. Van Alstine, U. S. Dist. Atty., Sioux City, Iowa, for petitioner.

William A. Shuminsky, Sioux City, Iowa, for respondent.

Harold LeVander and Roger C. Miller, South St. Paul, Minn., for the National Association of Order Buyers and Dealers, amicus curiae.

GRAVEN, District Judge.

The petitioner seeks enforcement of a subpoena duces tecum against the respondent under the Packers and Stockyards Act, 1921, 7 U.S.C.A. § 181 et seq. Section 202 of the Act [7 U.S.C.A.] defines the term "stockyard" as used therein as a "place, establishment, or facility commonly known as stockyards, conducted or operated for compensation or profit as a public market * * * in which live cattle, sheep, swine, horses, mules, or goats are received, held, or kept for sale or shipment in commerce." When, under Section 203 of the Act, the Secretary of Agriculture has determined that a particular stockyard comes within the terms of the definition he posts notices to that effect in such stockyard. 7 U.S.C.A. § 203. A stockyard in which such notice has been posted is known as a "posted" stockyard. A stockyard in which such notice has not been posted is known as an "unposted" stockyard. Section 203 of the Act also provides that no person may carry on the business of a market agency or dealer at a posted stockyard unless he has registered with the Secretary of Agriculture. Under Section 201 of the Act one selling or buying livestock in commerce on a commission basis at a "posted" stockyard is known as a marketing agency. Under the same Section a dealer is one, not a marketing agency, who is engaged in the business of buying or selling livestock in commerce at a "posted" stockyard either on his own account or as the employee or agent of the vendor or purchaser. Section 183 of the Act provides as follows:

"For the purpose of this chapter (but not in anywise limiting the definition in section 182 of this title) a transaction in respect to any article shall be considered to be in commerce if such article is part of that current of commerce usual in the livestock and meat-packing industries, whereby livestock, meats, meat food products, livestock products, dairy products, poultry, poultry products, or eggs, are sent from one State with the expectation that they will end their transit, after purchase, in another, including, in addition to cases within the above general description, all cases where purchase or sale is either for shipment to another State, or for slaughter of livestock within the State and the shipment outside the State of the products resulting from such slaughter. Articles normally in such current of commerce shall not be considered out of such current through resort being had to any means or device intended to remove transactions in respect thereto from the provisions of this chapter. For the purpose of this section the word 'State' includes Territory, the District of Columbia, possession of the United States, and foreign nation."

Section 222 of the Act provides as follows:

"For the efficient execution of the provisions of this chapter, and in order to provide information for the use of Congress, the provisions (including penalties) of sections 46 and 48–50 of Title 15, are made applica-

ble to the jurisdiction, powers, and duties of the Secretary in enforcing the provisions of this chapter and to any person subject to the provisions of this chapter, whether or not a corporation. The Secretary, in person or by such agents as he may designate, may prosecute any inquiry necessary to his duties under this chapter in any part of the United States."

Section 49 of Title 15 United States Code Annotated, referred to in Section 222 of the Act, provides, in part:

"* * * the commission, or its duly authorized agent or agents, shall at all reasonable times have access to, for the purpose of examination, and the right to copy any documentary evidence of any corporation being investigated or proceeded against; and the commission shall have power to require by subpoena the attendance and testimony of witnesses and the production of all such documentary evidence relating to any matter under investigation. * * *

"Such attendance of witnesses and the production of such documentary evidence, may be required from any place in the United States, at any designated place of hearing. And in case of disobedience to a subpoena the commission may invoke the aid of any court of the United States in requiring the attendance and testimony of witnesses and the production of documentary evidence."

The Secretary of Agriculture promulgated certain regulations under the Packers and Stockyards Act. One of those regulations appears as Regulation 201.94, Code of Federal Regulations. That Regulation provides as follows:

"Each packer, stockyard owner, registrant, and licensee shall give to the Secretary or his duly authorized representatives in writing or otherwise, and under oath or affirmation if requested by such representatives, any information concerning the business of the packer, stockyard owner, registrant, or licensee which may be required in order to carry out the provisions of the act and the regulations in this part within such reasonable time as may be specified in the request for such information."

Section 192 of the Packers and Stockyards Act enumerates a number of trade practices which are unlawful under the Act. Section 210 of that Act provides, in part, as follows:

"(a) Any person complaining of anything done or omitted to be done by any stockyard owner, market agency, or dealer (hereinafter in this section referred to as the 'defendant') in violation of the provisions of sections 205–207, or 208 of this title, or of an order of the Secretary made under sections 201–203, 205–217a of this title, may, at any time within ninety days after the cause of action accrues, apply to the Secretary by petition which shall briefly state the facts, whereupon the complaint thus made shall be forwarded by the Secretary to the defendant, who shall be called upon to satisfy the complaint, or to answer it in writing, within a reasonable time to be specified by the Secretary. If the defendant within the time specified makes reparation for the injury alleged to be done he shall be relieved of liability to the complainant only for the particular violation thus complained of. If the defendant does not satisfy the complaint within the time specified, or there appears to be any reasonable ground for investigating the complaint, it shall be the duty of the Secretary to investigate the matters complained of in such manner and by such means as he deems proper.

"(b) The Secretary, at the request of the livestock commissioner, board of agriculture, or other agency of a State or Territory, having jurisdiction over stockyards in such

State or Territory, shall investigate any complaint forwarded by such agency in like manner and with the same authority and powers as in the case of a complaint made under subdivision (a) of this section.

"(c) The Secretary may at any time institute an inquiry on his own motion, in any case and as to any matter or thing concerning which a complaint is authorized to be made to or before the Secretary, by any provision of sections 201–203 and 205–217a of this title, or concerning which any question may arise under any of the provisions of said sections, or relating to the enforcement of any of the provisions of said sections. The Secretary shall have the same power and authority to proceed with any inquiry instituted upon his own motion as though he had been appealed to by petition, including the power to make and enforce any order or orders in the case or relating to the matter or thing concerning which the inquiry is had, except orders for the payment of money."

The Sioux City Stockyards is a "posted" stockyard under the Packers and Stockyards Act. The respondent is engaged in buying and selling cattle on his own behalf at that stockyard. He is registered as a dealer with the Secretary of Agriculture under the provisions of the Act. John Harvey Company is a marketing agency at the Sioux City Stockyards. It is registered as such with the Secretary of Agriculture under the provisions of the Act. It maintains an office at 106 Live Stock Exchange Building at the Sioux City Stockyards. The transactions of the respondent at the Sioux City Stockyards are cleared through it. The books of the respondent relating to his cattle transactions at the Sioux City Stockyards are kept at the office of the John Harvey Company. The respondent owns and operates a farm a short distance from Sioux City. In January, 1951, the respondent and one Paul Fleming formed a partnership known as the Woerth Cattle Company. The partnership was dissolved in October or November, 1952. While the partnership was in existence it operated a stockyard at Clarence, Iowa, about 275 miles east of Sioux City. Since the dissolution of the partnership, the respondent has operated the stockyard at that place under the trade name of Woerth Cattle Company. In the partnership agreement and in the reports made, the principal place of business of the Woerth Cattle Company is given as 106 Live Stock Exchange Building, which, as noted, is at the Sioux City Stockyards. The respondent ships to the stockyard at Clarence, Iowa, cattle purchased by him at various places, including cattle purchased by him at the Sioux City Stockyards. The respondent keeps and maintains at the office of the John Harvey Company a set of records which he contends contains a record of his activities as a registered "dealer" under the Act. The petitioner refers to those records as the "regular account." The respondent keeps and maintains at the office of the John Harvey Company another set of records which he contends relates to his activities at the Clarence, Iowa, Stockyard. The petitioner refers to those records as the "special account." The respondent sought to keep the various business activities conducted by him separated. There were separate employees for each business. Separate Social Security and tax reports were made and kept for each business activity.

The Secretary of Agriculture instituted an investigation under Section 222 of the Act and Regulation 201.88 of the Code of Federal Regulations for the purpose of ascertaining whether or not the respondent as a registrant under the Act was in compliance with the Act and the regulations promulgated thereunder. An authorized representative of the Secretary of Agriculture made request for the respondent's records for the years 1952, 1953 and 1954 at the office of the John Harvey Company. The records and supporting data for the years 1952, 1953 and 1954 for the so-called "regular ac-

count" and for the 1953 and 1954 so-called "special account" were made available to that representative by the John Harvey Company apparently without authorization from the respondent. Those records were later returned to the respondent. That representative of the Secretary of Agriculture later made request for the records and supporting data for the so-called "special account" for the year 1952. The respondent refused to make those records and data available to that representative.

On November 16th, 1954, the following subpoena duces tecum was issued:

"Subpena Duces Tecum

"To: Mr. Leslie W. Woerth

"106 Live Stock Exchange Building

"Sioux City, Iowa

"You are required to appear before Mr. J. E. Roningen, District Supervisor, Packers and Stockyards Branch, Livestock Division, Agricultural Marketing Service, United States Department of Agriculture, at your place of business at Room 106 Live Stock Exchange Building, Sioux City, Iowa, on the 29th day of November, 1954, at 10:00 o'clock A.M., C. S. T., of that day, and to produce at said time and place for examination and copying by said J. E. Roningen or other authorized representatives of the Secretary of Agriculture the following books, papers, letters, or other documentary evidence pertaining to your business as a registrant under the Packers and Stockyards Act, 1921, as amended and supplemented (7 U.S.C. 181 et seq., 19 F. R. 4523):

"All records relating to your said business for the year 1952, including your Special Account for 1952, and all supporting papers and documents.

"Such requirement is essential in connection with an investigation by the Secretary of Agriculture as to whether your operations during 1952 were in compliance with the said act and regulations.

"Fail not at your peril.

"Done at Washington, D. C., this 16th day of November, 1954.

/s/ Roy W. Lennartson
"Deputy Administrator,
"Marketing Services"

On November 19, 1954, that subpoena was served upon the respondent. The respondent refused to comply with the subpoena and on February 4, 1955, the petitioner commenced this proceeding. The relief requested by the petitioner is as follows:

"Wherefore, your petitioner respectfully requests that an order be entered by this Honorable Court requiring the respondent to comply with said subpena duces tecum by producing for examination and copying by J. E. Roningen, District Supervisor of the Packers and Stockyards Branch, Livestock Division, Agricultural Marketing Service, United States Department of Agriculture, at Room 106, Live Stock Exchange Building, Sioux City, Iowa, on a day certain the following books, papers, letters, or other documentary evidence of the respondent:

"All records relating to his business as a registrant under the Packers and Stockyards Act for the year 1952, including his 'Special Account' for 1952, and all supporting papers and documents."

In paragraph 2 of his answer the respondent states as follows:

"The respondent admits that he is a dealer registered with the Secretary of Agriculture to buy and sell livestock for his own account at the Sioux City Stock Yards, Sioux City Iowa, a posted Stock Yards subject to the provisions of the Act (7 U.S. C. 202). Respondent further states that as a registrant and dealer at said Stock Yards that he purchases livestock with his own monies for his own account and that he at no time

engages in the purchase of livestock for other persons or handles money of other persons. That in addition to the business conducted by him as a registrant at the Sioux City Stock Yards, he is also the owner of a business at Clarence, Iowa which he operates under the trade name of Woerth Cattle Company; said business is not conducted by the respondent as a registrant and is not conducted at a posted Stock Yards at Clarence, Iowa or a Stock Yards subject to the provisions of the Act and is what is termed an 'off market' operation. That his transactions as a registrant are kept in an account called his 'regular' account; that his transactions at Clarence, Iowa are kept in an account called a 'special' account."

In paragraph 4 of his answer the respondent stated that he refused to comply with the subpoena duces tecum in connection with the so-called "special account" for 1952 for the reason said " 'special account' was not a record relating to his business as a registrant under the Packers and Stock Yards Act, for the year 1952, but related to his 'off market' business at Clarence, Iowa." In paragraph 7 of his answer the respondent states as follows:

"That the demand of the Secretary of Agriculture contained in said subpoena duces tecum is not authorized by the Packers and Stock Yards Act and is in violation of respondent's rights under the Fourth Amendment of the Constitution of the United States."

Subsequent to the filing of the respondent's answer, the National Association of Order Buyers and Dealers, a national trade organization of dealers and order buyers at the principal public livestock markets of the United States, filed an application asking for leave to file a written brief and argument and to present oral argument as amicus curiae. In that application it was stated that the questions involved in this proceeding were of vital interest to the members of that Association. The application was granted. That Association supported the views and the positions of the respondent. Following a trial before the Court, the parties submitted written briefs and arguments, made oral arguments, and submitted the case to the Court.

It appears that the investigation of the respondent's records had its origin in a complaint made to the Department of Agriculture concerning the respondent. The name of the person and the nature of the complaint were not disclosed to the respondent either before or at the time of trial. No proceedings have been commenced or instituted by the Secretary of Agriculture against the respondent for any violation of the Packers and Stockyards Act and the regulations promulgated thereunder.

The request of the Secretary of Agriculture for the production of the supporting papers and documents relating to the so-called "special account" of the respondent had its origin in certain entries appearing in the so-called "regular account" of the respondent. The so-called "regular account" contained a record of the cattle purchased by the respondent as a "dealer" at the Sioux City Stockyard and the purported disposition of the same. In that account there were numerous entries showing transfers by the respondent of cattle so purchased by the respondent to the L. W. Woerth "special account" without any other disclosure as to their disposition. These were the only entries made in the "regular account" relating to the disposition of these cattle. It appears that these cattle were then shipped to the Woerth Cattle Company at the Clarence, Iowa, stockyard. The records concerning these cattle, subsequent to the entries made in the "regular account" noted above, are contained in the so-called "special account" which is the record of respondent's activities at Clarence, Iowa. It is as to the record of these cattle contained in the "special account" which is the subject matter of this controversy. The respondent raises no question as to the constitutionality of any of the provisions

of the Packers and Stockyards Act, the validity of any of the regulations promulgated by the Secretary of Agriculture, or as to the delegation of the power of authority of the Secretary of Agriculture in connection with the issuance of the subpoena duces tecum. The respondent cites Regulation 201.95 of 9 Code of Federal Regulations, superseding Regulation 201.89, which provides as follows:

> "Each packer, stockyard owner, registrant, and licensee shall, upon proper request during ordinary business hours, permit authorized representatives of the Secretary to enter the place of business and examine records requested pertaining to the business of the packer, stockyard owner, registrant, or licensee *as such*, and to make copies thereof, and inspect such property of persons subject to the act as is necessary to carry out the provisions of the act and the regulations in this part. Any necessary facilities for such examination of records and inspection of property shall be extended to authorized representatives of the Secretary by the packer, stockyard owner, registrant, or licensee, his agents and employees." (Emphasis supplied.)

The respondent stresses the emphasized words "as such." It is the contention of the respondent that the transferring of the cattle in question to his "special account" and the shipping of them to the Clarence, Iowa, stockyard, an "unposted" stockyard, took them out of the stream of "commerce" and beyond the administrative authority of the Secretary of Agriculture. It is the contention of the petitioner that such transfer and shipment did not remove the cattle in question from the stream of commerce. It is the further contention of the petitioner that only upon an investigation could it be determined whether or not the cattle in question had passed out of the stream of commerce and whether or not the transactions involving them were so closely connected with the respondent's activities as a registered "dealer" as to be a part of such activities and whether or not the transactions involving them were being made use of to evade compliance with the provisions of the Packers and Stockyards Act and the regulations promulgated thereunder. In this connection the petitioner claims that the respondent is attempting to make his own determination as to which of his records relating to the disposition of cattle purchased by him as a registered dealer do or do not pertain to his activities under the Act.

The Packers and Stockyards Act was enacted by Congress to remedy a number of undesirable practices which had arisen in connection with the buying and selling of livestock at the major stockyards. Stafford v. Wallace, 1922, 258 U.S. 495, 513, 42 S.Ct. 397, 66 L.Ed. 735, 23 A.L.R. 229. The object of the Act is stated by Chief Justice Taft as follows, at page 514 of 258 U.S., at page 401 of 42 S.Ct.:

> "The object to be secured by the act is the free and unburdened flow of live stock from the ranges and farms of the West and the Southwest through the great stockyards and slaughtering centers on the borders of that region, and thence in the form of meat products to the consuming cities of the country in the Middle West and East, or, still as live stock, to the feeding places and fattening farms in the Middle West or East for further preparation for the market."

The cattle in question came within the administrative authority of the Secretary of Agriculture when they arrived at the Sioux City Stockyards. The respondent's activities in connection with them came within the same administrative authority when he purchased the cattle at that stockyard. The Secretary of Agriculture having acquired administrative authority as to the cattle and the respondent's activities in connection with them, such authority would continue until divested. Such authority would not be divested until the status of the cattle

in question and the respondent's activities in connection with them was such that further exercise or attempted exercise of such authority would manifestly be beyond the scope of the Act and the purposes to be achieved by the Act.

Regulation 201.46, Code of Federal Regulations, provides, in part, as follows:

" * * * Each registrant buying or selling livestock on a commission basis or otherwise, * * * in addition to other necessary records, shall make and keep an accurate record of the number and weight of livestock bought, sold, or otherwise disposed of each business day, the prices paid or received therefor, and the charges made for services."

7 U.S.C.A. § 221 provides, in part, as follows:

"Every packer or any live poultry dealer or handler, stockyard owner, market agency, and dealer shall keep such accounts, records, and memoranda as fully and correctly disclose all transactions involved in his business * * *."

Therefore under the Act as well as the Regulations it was the duty of the respondent to keep such records as would clearly and adequately reveal the disposition of livestock purchased by a registrant. The respondent's records as to the disposition of the cattle in question, made available to the Secretary of Agriculture, merely showed transfers to the L. W. Woerth "special account." As heretofore noted, that disposition as to many of the cattle in question involved no change in ownership.

The matter of an administrative agency making an investigation of the records of a party for the purpose of determining whether a particular activity or activities of such party is within the scope of that agency's administrative authority has been considered by a number of courts.

The case of Oklahoma Press Publishing Company v. Walling, 1943, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614, 166 A.L.R. 531, involved the validity of a Court Order directing a newspaper company to comply with a subpoena duces tecum issued by the Administrator of the Wage and Hour Division of the Department of Labor. The subpoena was issued for the purpose of ascertaining whether the activities of the newspaper company were such as to bring it within the scope of the Fair Labor Standards Act, 29 U.S. C.A. § 201 et seq. The Administrator issued the subpoena under the provisions of Section 9 of the Federal Trade Commission Act, 15 U.S.C.A. § 49, which, as heretofore noted, is the same section adopted by the Packers and Stockyards Act and under the provisions of which the subpoena in the present case was issued. The United States Supreme Court in upholding the enforceability of the subpoena duces tecum stated, at page 214 of 327 U.S., at page 508 of 66 S.Ct.:

"We think, therefore, that the Courts of Appeals were correct in the view that Congress has authorized the Administrator, rather than the District Courts in the first instance, to determine the question of coverage in the preliminary investigation of possibly existing violations; in doing so to exercise his subpoena power for securing evidence upon that question, by seeking the production of petitioners' relevant books, records and papers; and, in case of refusal to obey his subpoena, issued according to the statute's authorization, to have the aid of the District Court in enforcing it. No constitutional provision forbids Congress to do this. * * *"

That Court further stated, at page 216 of 327 U.S., at page 509 of 66 S.Ct.:

"The result therefore sustains the administrator's position that his investigative function, in searching out violations with a view to securing enforcement of the Act, is essentially the same as the grand jury's, or the court's in issuing other pretrial orders for the discovery of evidence, and is governed by the same limitations. These are that he shall not act arbitrarily or in ex-

cess of his statutory authority, but this does not mean that his inquiry must be 'limited * * * by * * forecasts of the probable result of the investigation * * *.' "

In Endicott Johnson Corporation v. Perkins, 1943, 317 U.S. 501, 63 S.Ct. 339, 87 L.Ed. 424, the question arose as to the Secretary of Labor's power to subpoena documents from the Endicott Johnson Corporation. The Walsh-Healey Act 41 U.S.C.A. § 35 et seq., provided that the Secretary could investigate labor standards at factories involved in government contracts. The Endicott Johnson Corporation alleged that the information sought involved certain of its plants not involved in work on such contracts. The Supreme Court reversed the District Court which had refused to enforce the subpoena. The Court held that the Secretary had power to determine the coverage of the Act. The Court concluded that the Secretary would be unable to determine if the Act had been complied with, unless the investigation was conducted. It would be of "dubious propriety" to have the Secretary decide the issue of coverage before allowing her to get evidence of violations. The Court further stated that because the evidence sought was not plainly incompetent or irrelevant to any lawful purpose of the Secretary it was the duty of the District Court to order its production.

In the President of the United States v. Skeen, 5 Cir., 1941, 118 F.2d 58, the Court held that the board in charge of enforcing the Connally Act, 15 U.S.C.A. § 715 et seq., was not bound by the defendant's denial that his activities were covered by the Act. The Court said that the board had the right to make its own investigation to determine that fact.

In Cudahy Packing Company v. Fleming, 1941, 122 F.2d 1005, the Eighth Circuit passed upon the enforceability of a subpoena duces tecum issued by the Administrator of the Wage and Hour Division of the Department of Labor. The information sought concerned two plants owned by the Packing Company and re-

lated to labor practices under the Fair Labor Standards Act. Here, again, Section 9 of the Federal Trade Commission Act was involved. One of the defenses raised in resistance to the enforcement of the subpoena was that one of the plants was not involved in interstate commerce and not subject to the Administrator's supervision. It was claimed that the Administrator could not lawfully compel production of the records of any employees, except those actually within the Act. To this defense the Court replied, at page 1009:

"* * * Where an industry is subject to the Fair Labor Standards Act, the Administrator is entitled * * * to inspect the records of all its employees, both nonexempt and exempt. * * * Similarly, where an employer is engaged in operating more than one plant or establishment, and seeks to claim that a part of such plants is subject to the Act and another is not, there can be no possible question as to the right of the Administrator to inspect the shipment records of all of them, in order to determine the scope of the operations of each and the relationship between them. Indeed, in any industry subject to the Act, the Supreme Court has declared that 'The requirement for records even of the intrastate transaction is an appropriate means to the legitimate end'. United States v. Darby, 312 U.S. 100, 125 [657], 61 S.Ct. 451, 462, 85 L.Ed. 609, 132 A.L.R. 1430."

This case was reversed by the United States Supreme Court, Cudahy Packing Co. v. Holland, 315 U.S. 785, 62 S.Ct. 803, 86 L.Ed. 1191, because of invalid delegation of subpoena power. However, the United States Court of Appeals for the Eighth Circuit in Walling v. Benson, 1943, 137 F.2d 501, 149 A.L.R. 186, certiorari denied, 1943, 320 U.S. 791, 64 S.Ct. 206, 88 L.Ed. 476, adopted the principles of coverage as stated in the case Cudahy Packing Company v. Fleming, supra. The Court, 137 F.2d on pages 503, 504, further stated its views on the re-

quirement of showing coverage by the demanding agency as follows:

"* * * the principle applied by us in the Cudahy Packing Co. case is controlling here, * * *. The implication of that decision simply is, * * * that, in order to be entitled to a compliance order from the district court for the enforcement of an investigatory subpoena, the Administrator is only required to satisfy the court of the existence of reasonable ground for making the investigation, i. e. reasonable ground to believe that the industry is subject to the Act, and not to make proof of actual coverage under the Act, nor is the employer entitled to a trial and adjudication of the question of coverage on such an application."

In defining what was meant by a reasonable ground for making the investigation the Court said, on pages 505, 506:

"By reasonable ground to believe that an industry is subject to the Act, we mean that which would be equivalent relatively, in the nature and circumstances of the situation, to what in other legal situations is referred to as probable cause. For investigatory purposes under the Act, it would amount simply to a justifiable basis for believing that a certain state of facts probably exists, derived from reasonable inquiry or other credible information. As applied to the immediate situation, it would be such facts or information as reasonably would lead the Administrator to believe that appellees' business, in some phase, was apparently and probably subject to the Act."

There are numerous holdings to the effect that an administrative agency is empowered with the right to determine what activities of a person are within their investigative realm. Martin Typewriter Co. v. Walling, 1 Cir., 1943, 135 F.2d 918; Mississippi Road Supply Co. v. Walling, 5 Cir., 1943, 136 F.2d 391,

certiorari denied, 1943, 320 U.S. 752, 64 S.Ct. 57, 88 L.Ed. 447; Fleming v. Montgomery Ward & Co., 7 Cir., 1940, 114 F. 2d 384, certiorari denied, 1940, 311 U.S. 690, 61 S.Ct. 71, 85 L.Ed. 446; Walling v. La Belle S. S. Co., 6 Cir., 1945, 148 F. 2d 198; Tobin v. Banks & Rumbaugh, 5 Cir., 1953, 201 F.2d 223, certiorari denied 1953, 345 U.S. 942, 73 S.Ct. 832, 97 L.Ed. 1368. See also Hagen v. Porter, 9 Cir., 1946, 156 F.2d 362, certiorari denied, 1946, 329 U.S. 729, 67 S.Ct. 85, 91 L.Ed. 631. But cf. General Tobacco & Grocery Co. v. Fleming, 6 Cir., 1942, 125 F.2d 596, 140 A.L.R. 783.

The case of Oklahoma Press Publishing Company v. Walling, supra, was decided following the decision of the United States Circuit Court of Appeals in the case of Walling v. Benson, supra. In the former case the Court stated, at pages 208, 209 of 327 U.S., at page 505 of 66 S.Ct.:

"* * * It is not necessary, as in the case of a warrant, that a specific charge or complaint of violation of law be pending or that the order be made pursuant to one. * * * The requirement of 'probable cause, supported by oath or affirmation,' literally applicable in the case of a warrant is satisfied, in that of an order for production, by the court's determination that the investigation is authorized by Congress, is for a purpose Congress can order, and the documents sought are relevant to the inquiry. * * *"

The case of Mines and Metals Corporation v. Securities and Exchange Commission, 9 Cir., 1952, 200 F.2d 317, certiorari denied, 1953, 345 U.S. 941, 73 S.Ct. 832, 97 L.Ed. 1367, involved the enforceability of a subpoena duces tecum issued by the Securities Exchange Commission. The Court upheld the enforceability of the subpoena. The Court stated, at page 321 of 200 F.2d:

"Appellants say that the Commission in a proceeding of this kind must affirmatively show violations, or probable violations of the Securi-

ties Act of 1933 [15 U.S.C.A. § 77a et seq.] before it has jurisdiction to proceed with such an investigation. It is contended that the Commission may proceed only if facts are established 'sufficient to show reasonable and probable cause, similar to that required for a search warrant'. Repeated declarations of the Supreme Court and of this Court are to the contrary. Oklahoma Press Publishing Company v. Walling, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614; Endicott Johnson Corporation v. Perkins, 317 U.S. 501, 63 S.Ct. 339, 87 L.Ed. 424; Penfield Co. of California v. Securities and Exchange Commission, 9 Cir., 143 F.2d 746, 154 A.L.R. 1027, certiorari denied 323 U.S. 768, 65 S.Ct. 121, 89 L.Ed. 614; Brewer v. Securities and Exchange Commission, 9 Cir., 145 F.2d 233; Consolidated Mines of California v. Securities and Exchange Commission, 9 Cir., 97 F.2d 704; Woolley v. United States, 9 Cir., 97 F.2d 258."

The case of Mississippi Road Supply Co. v. Walling, supra, involved the enforceability of a subpoena duces tecum issued by the Administrator of the Wage and Hour Division of the Department of Labor. The Court upheld the enforceability of the subpoena. The Court stated, at page 394 of 136 F.2d:

" * * * The burden indeed of showing that the inquiry is unlawful is upon him who is called on to show cause why a subpoena should not be obeyed. The presumption of regularity of the proceedings of public officers so places the burden, unless on the face of the proceedings they are unlawful or oppressive. But if it is made to appear that the investigation is clearly without just authority, as that the person investigated is clearly not under the Act and that grave inconvenience or injury may result, the court may very properly decline to assist. * * * "

The respondent claims that the enforcement of the subpoena duces tecum would constitute a violation of his rights under the Fourth Amendment to the Constitution of the United States. In support of that contention he relies upon the holdings in Cudahy Packing Co. v. United States, 7 Cir., 1926, 15 F.2d 133, and Federal Trade Commission v. American Tobacco Company, 1924, 264 U.S. 298, 44 S.Ct. 336, 68 L.Ed. 696, 32 A.L.R. 786. The Cudahy Packing Co. case had to do with the problem of unlawful search and seizure under the provisions of the Packers and Stockyards Act. The Court held that the requested evidence, which was the petitioner's books of account and records, need not be produced. Several reasons are given for this conclusion. First, that the term "documentary evidence" as defined in Section 4 of the Federal Trade Commission Act, 15 U.S. C.A. § 44, did not include such items as books of account and records. Since this decision was rendered, the definition as found in Section 4 of the Act has been amended. The definition, found in Title 15 U.S.C.A. § 44, now reads:

" 'Documentary evidence' includes all documents, papers, correspondence, books of account, and financial and corporate records."

The Court, as another basis for denying the request, stated that suspicion on the part of the Secretary that the books of the packers were not kept according to the provisions of the Act was not a sufficient ground for their examination. The Court felt that unlimited inspection should not be allowed to determine if there was cause to believe that a highly penal statute had been transgressed. The Court finally concluded that even if the books of account and records fell within the statutory authorization of the Secretary's right to inspect, the demands made in this instance violated the Fourth Amendment. The Court stated that the demands covered such a mass of documents as to be unreasonable.

The American Tobacco Company case, supra, is a leading and often cited case

in this area of unreasonable searches and seizures. The petition for a writ of mandamus by the Federal Trade Commission alleged unfair discrimination by the respondents. In his opinion denying the writs Justice Holmes said, at pages 305, 306 of 264 U.S., at page 337 of 44 S.Ct.:

"* * * Anyone who respects the spirit as well as the letter of the Fourth Amendment would be loath to believe that Congress intended to authorize one of its subordinate agencies to sweep all our traditions into the fire * * *, and to direct fishing expeditions into private papers on the possibility that they may disclose evidence of crime. * * *

"* * * The analogies of the law do not allow the party wanting evidence to call for all documents in order to see if they do not contain it. Some ground must be shown for supposing that the documents called for do contain it. * * * Some evidence of the materiality of the papers demanded must be produced * * *."

From the above discussed cases it would appear that a major objection to the enforcing of the subpoenas was their lack of specificity. See also, Hale v. Henkel, 1906, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652. In each case there was a large number of records demanded. To produce them all would have been a burdensome task. It was quite evident that large amounts of the material demanded was irrelevant. In referring to situations where the subpoena calls for a mass of documents, Justice Holmes in the American Tobacco Company case, supra, said, at page 307 of 264 U.S., at page 337 of 44 S.Ct.:

"* * * We assume for present purposes that even some part of the presumably large mass of papers relating only to intrastate business may be so connected with charges of unfair competition in interstate matters as to be relevant, Stafford v. Wallace, 258 U.S. 495, 520, 521, 42 S.Ct. 397, 66 L.Ed. 735, but that possibility does not warrant a demand for the whole. * * *"

█ The fact that a subpoena demanded "any other records" containing specified items of information did not render a subpoena too indefinite. Westside Ford, Inc., v. United States, 9 Cir., 1953, 206 F.2d 627. In Hagen v. Porter, supra [156 F.2d 366], a subpoena asking for "all books, ledgers, day books, purchase and sales invoices" covering a period of approximately one year was not considered too indefinite or unreasonable. Where the production of the information demanded by a subpoena is a burden on the party in that a mass of documents is demanded, the courts are more apt to construe the subpoena to be unreasonable. Brown v. United States, 1928, 276 U.S. 134, 48 S.Ct. 288, 72 L.Ed. 500; McMann v. Securities and Exchange Commission, 2 Cir., 1937, 87 F.2d 377, 109 A.L.R. 1445, certiorari denied, McMann v. Engel, 1937, 301 U.S. 684, 57 S.Ct. 785, 81 L.Ed. 1342. In the case of United States v. Medical Soc. of District of Columbia, D.C.1938, 26 F.Supp. 55, the problem of the reasonableness of the subpoena was considered. The Court concluded that the subpoena must cover only a reasonable time and must specify with reasonable particularity the subjects to which the desired writings relate. With this in mind the Court held certain parts of the subpoena unreasonable. However, that part of the subpoena calling for all "minutes, letters, telegrams, correspondence, messages, memoranda, reports, notes, or other documents, made, written, sent, or received" covering a period of some six years and relating to certain of the defendant's activities was held not to be unreasonable. The Court felt the time involved in the request was not unreasonable and that the search for the documents could be made without great difficulty.

Judge Learned Hand aptly commented on this problem of unreasonable search and seizure in the case of McMann v. Securities and Exchange Commission,

supra, when he said, at page 379 of 87 F.2d:

"* * * No doubt a subpoena may be so onerous as to constitute an unreasonable search. Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652; Federal Trade Commission v. American Tobacco Company, 264 U.S. 298, 44 S.Ct. 336, 68 L.Ed. 696, 32 A.L.R. 786. Even then, the sanction is unobjectionable, unlike a descent upon one's dwelling or the seizure of one's papers; the search is 'unreasonable' only because it is out of proportion to the end sought, as when the person served is required to fetch all his books at once to an exploratory investigation whose purposes and limits can be determined only as it proceeds. The investigation at bar was no such 'fishing excursion,' * * *. The documents demanded were few and their production did not interfere with the business of Engel & Company. There was no oppression, or evidence of any other motive than a lawful investigation. Unless such subpoenas are valid, it is impossible to see how the statutes can be enforced at all, or how any wrongdoer can be brought to book."

■ Another requirement for an enforceable subpoena is that the information called for must be relevant. This requirement is stated in the cases already referred to and in the cases bearing on the point generally. In re United Shoe Machinery Corporation, D.C.1947, 73 F. Supp. 207; Federal Trade Commission v. National Biscuit Co., D.C.1937, 18 F. Supp. 667; Detweiler Bros. v. Walling, 9 Cir., 1946, 157 F.2d 841, certiorari denied, 1947, 330 U.S. 819, 67 S.Ct. 676, 91 L.Ed. 1270. The case of Goodyear Tire & Rubber Co. v. National Labor Relations Board, 6 Cir., 1941, 122 F.2d 450, 136 A.L.R. 883, placed upon the Government the responsibility of offering evidence to show that the information sought by the subpoena was relevant. However, the agency's determination that the information is relevant is entitled to a prima facie stamp of correctness by the Courts. Kilgore Nat. Bank v. Federal Petroleum Board, 5 Cir., 1954, 209 F.2d 557.

In Oklahoma Press Publishing Company v. Walling, supra, the Court stated what it thought to be the general rule as established from the cases generally regarding the application of the Fourth Amendment to unreasonable searches and seizures where the production of documents is demanded. The Court stated, at page 208 of 327 U.S., at page 505 of 66 S.Ct.:

"* * * the Fourth [Amendment], if applicable, at the most guards against abuse only by way of too much indefiniteness or breadth in the things required to be 'particularly described,' if also the inquiry is one the demanding agency is authorized by law to make and the materials specified are relevant. * * *"

■ A subpoena meets the requirements for enforcement if the inquiry made is within the authority of the demanding agency, the demand is not too indefinite, and the information sought is reasonably relevant. United States v. Morton Salt Co., 1950, 338 U.S. 632, 70 S.Ct. 357, 368, 94 L.Ed. 401, 415; Oklahoma Press Publishing Company v. Walling, supra.

In Fleming v. Montgomery Ward & Co., supra, the Court stated conclusions which appropriately set out the agency's power to subpoena the books and records of persons subject to the agency's control. The Court there said on page 391 of 114 F.2d:

"We conclude that when Congress, in the exercise of its plenary power of regulation under the commerce clause, creates an administrative agency with power to regulate and supervise the acts and practices of an industry in order to safeguard commerce, and requires records to be kept to have available to the agency information respecting specified sub-

jects, and requires the agency to enforce the requirement to keep such records, such administrative agency is entitled to inspect the records at any time to obtain the information and for the further purpose of determining whether or not such records are being kept, and whether or not they are being kept in such a way as to make available the specified information."

■ The respondent further contends that before an investigation can be made of his records a formal complaint must be filed and the contents of the complaint be made known to him. Sections 210(c) and 222 of the Packers and Stockyards Act give the Secretary of Agriculture the power and authority to make inquiries for the purpose of ascertaining whether the provisions of the Act are being observed. There is no provision in the Act or in any of the regulations promulgated thereunder that an investigation of the records of a registrant must be preceded by the filing of a formal complaint. There is no provision in the Act or in any of the regulations promulgated thereunder that the contents of a complaint against a registrant be made known to him before an investigation may be made of his records in connection therewith. An administrative agency entrusted with the administration of a Federal Act, when acting within the scope of its administrative authority, may conduct an investigation as to possible violations of such Act without the filing of formal complaint against or the giving of written notice of a pending complaint to a party where records are sought to be investigated in connection therewith. Oklahoma Press Publishing Company v. Walling, supra; National Labor Regulations Board v. Barrett Co., 7 Cir., 1941, 120 F.2d 583; Mines and Metals Corporation v. Securities and Exchange Commission, supra; Securities and Exchange Commission v. Vacuum Can Co., 7 Cir., 1946, 157 F.2d 530, certiorari denied, 1947, 330 U.S. 820, 67 S.Ct. 770, 91 L.Ed. 1271. In the case of Oklahoma Press Publishing Company v. Walling, supra, the United States

Supreme Court stated, at page 201 of 327 U.S., at page 501 of 66 S.Ct.:

"* * * The very purpose of the subpoena and of the order, as of the authorized investigation, is to discover and procure evidence, not to prove a pending charge or complaint, but upon which to make one if, in the Administrator's judgment, the facts thus discovered should justify doing so."

■ The respondent also makes the contention that because of the actions of the representative of the Secretary of Agriculture making the investigation the investigation also constituted an unreasonable search and seizure and the subpœna duces tecum was void. As heretofore noted, the respondent officed in the office of his clearer, John Harvey Company, in a building at the Sioux City Stockyards, and the records constituting his so-called "regular account" and his so-called "special account" were kept and maintained in that office. The representative of the Secretary of Agriculture who was making the investigation had an office at the Sioux City Stockyards. In connection with the investigation he secured from the John Harvey Company the records and supporting data for the "regular account" for the years 1952, 1953, and 1954 and for the "special account" for the years 1953 and 1954. The representative took those records to his office at the Sioux City Stockyards and examined them there. Later he made request to the John Harvey Company for the records and supporting data for the "special account" for the year 1952 which was refused upon direction of the respondent. It is the claim of the respondent that he never authorized the John Harvey Company to turn over to the representative of the Secretary of Agriculture the records that were turned over and that the unauthorized securing of the records and the removal of them by the representative constituted an unreasonable search and seizure; and that the issuance of the subpoena duces tecum was based upon information secured by

such unreasonable search and seizure. As soon as the representative was informed that the respondent was claiming that he had not authorized the turning over of the records, they were promptly returned. The relationship of the John Harvey Company to the respondent's records does not clearly appear. It does appear that the records were in the apparent custody of the John Harvey Company. The respondent does not contend that the Secretary of Agriculture does not have the right to examine the records and supporting data in the "regular account." The "regular account" for 1952 contains the entries as to the transfers of cattle to the "special account," and it is those entries which were the occasion for the issuance of the subpoena duces tecum calling for the production of the records and supporting data for the "special account" for the year 1952. It appears that the representative assumed that the John Harvey Company had control and custody of the records and that the John Harvey Company assumed it was permissible for it to turn the records over to the representative. The occurrence is without legal significance. The records were promptly returned when the attention of the representative was called to the claimed lack of authority on the part of the John Harvey Company. The issuance of the subpœna duces tecum was occasioned by the entries appearing in the 1952 "regular account" to which the Secretary of Agriculture was indisputedly entitled to examine.

■ The records and supporting data for the "special account" for the year 1952 were records relating to a business activity directed by the respondent from the same office in which he directed his activities as a registered dealer. Those records and data had to do with cattle which the respondent acquired in his activities as such dealer and were closely related thereto. Those records could explain and throw light on his activities as such dealer. The respondent's contention that the subpoena duces tecum in question constitutes an attempt on the part of the Secretary of Agriculture to extend his administrative authority to an "unposted" stockyard would not seem to be well founded. Under the provisions of the Act and the regulations promulgated thereunder, it was the duty of the respondent as a registered dealer under the Act to keep records which clearly and adequately showed the disposition of cattle purchased by him as such dealer. A book entry transferring such cattle from himself to himself is not such a record as clearly and adequately shows the disposition made of them. The Secretary of Agriculture acquired administrative jurisdiction as to the cattle in question when they arrived at the Sioux City Stockyards. He acquired administrative jurisdiction as to the respondent's activities in connection with them when the respondent purchased them. That jurisdiction was not and could not be divested simply by the making of entries reciting that they had been transferred to his "special account." It may be that the records requested pertain to transactions not within the scope of the Act and which are irrelevant to the investigation in question. However, the fact that the respondent may have intermingled irrelevant information in the records in question cannot serve to defeat the right of the Secretary of Agriculture to examine those records as to transactions which had their origin in the activities of the respondent as a registered dealer. The subpoena duces tecum in question is not couched in broad and sweeping language. It does not call for indefinite records or a mass of records. It is very specific and limited in its terms. The production of the records called for by the subpoena duces tecum would not disrupt or interfere with the respondent's business activities or place an undue burden on him or cause hardship to him. The investigation in question is one authorized by Congress. It is for a purpose within the power of Congress to authorize. The subpoena duces tecum in question was issued for the purpose of making such an investigation and calls for the production of records which are apparently relevant thereto.

It is the holding of the Court that the subpoena duces tecum in question was valid and proper and that it should be enforced.

It is ordered that judgment be entered for the enforcement of the subpoena duces tecum as requested by the Petitioner.

It is further ordered that under Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. the findings of fact, conclusions of law, and order for judgment in the foregoing opinion shall constitute the findings of fact, conclusions of law, and order for judgment in this case.