**Leslie W. WOERTH, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 15461.**

United States Court of Appeals
Eighth Circuit.

April 11, 1956.

---

William A. Shuminsky, Sioux City, Iowa (Kelly, Le Vander & Gillen, So. St. Paul, Minn., attys. for amicus curiae, were with him on the brief), for appellant.

F. E. Van Alstine, U. S. Atty., Sioux City, Iowa, and Neil Brooks, Atty., U. S. Dept. of Justice, Washington, D. C. (J. Stephen Doyle, Jr., Atty., U. S. Dept. of Justice, Washington, D. C., Philip C. Lovrien, Asst. U. S. Atty., Sioux City, Iowa, and Donald A. Campbell and John L. Currin, Attys., U. S. Dept. of Agriculture, Washington, D. C., were with them on the brief), for appellee.

Before SANBORN, WOODROUGH and VAN OOSTERHOUT, Circuit Judges.

SANBORN, Circuit Judge.

This is an appeal from an order granting enforcement of an investigatory subpoena duces tecum directed to Leslie W. Woerth and issued on November 16, 1954, by a duly authorized representative of the Secretary of Agriculture. The subpoena required Woerth, a livestock dealer registered under the Packers and Stockyards Act, 42 Stat. 159, as amended and supplemented, 7 U.S.C.A. § 181 et seq., and engaged in business at the Sioux City, Iowa, Stock Yards, to produce at Woerth's place of business in the Live Stock Exchange Building, Sioux City, Iowa, for examination and copying by J. E. Roningen, District Supervisor, Packers and Stockyards Branch, Livestock Division, Agricultural Marketing Service, United States Department of Agriculture, or other authorized representatives of the Secretary of Agriculture, all records relating to Woerth's business as a registrant for the year 1952, including his "Special Account" for 1952, and all supporting papers and documents. The subpoena stated: "Such requirement is essential in connection with an investigation by the Secretary of Agriculture as to whether your operations during 1952 were in compliance with said act [7 U.S.C.A. § 181 et seq.] and regulations [9 C.F.R. § 201 et seq.; 19 F.R. § 4523]."

Woerth, in response to the subpoena, on November 29, 1954, wrote a letter to the Deputy Administrator, Marketing Services, who had issued the subpoena, in which letter he stated that, despite the fact that there had been no disclosure of the purpose for which the Administrator had, without the consent of Woerth, taken possession of records relating to his business, which records had thereafter been returned on request, the records were available to him (the Administrator) "to inspect and copy under the provisions and limitations imposed by law and regulation." The final paragraph of Woerth's letter read as follows:

"Reference is made in the Subpena to records of a special account allegedly kept by me in 1952 in the conduct of my business as a registrant. I have heretofore on a number of occasions told Mr. Roningen that I did not maintain a special account in connection with my operations as a registrant. It is therefore impossible for me to comply with the subpena in that respect."

On February 2, 1955, the Government brought the instant proceeding to compel Woerth to comply with the subpoena. Woerth in his answer asserted, in effect, that the transactions evidenced by his "Special Account" related to his "off-market" operations, were unrelated to his purchase and sale of livestock as a registered dealer at the Sioux City Stock Yards, and were not within the investigatory authority of the Secretary of Agriculture. Woerth asserted in his answer that the demand of the Secretary contained in the subpoena was not authorized by the Packers and Stockyards Act and was a violation of Woerth's rights under the Fourth Amendment of the Constitution of the United States.

At the trial of the case, the Government's evidence tended to show that a complete audit of Woerth's operations as a registered dealer during the year 1952 required an examination of his books and records for that year, including his "Special Account", to which had been tansferred cattle purchased by him at the Sioux City Stock Yards and disposed of in his alleged "off-market" operations. Woerth's testimony was to the effect that his "Special Account" had to do with cattle purchased at the Sioux City Stock Yards and elsewhere solely in connection with and in furtherance of his own local business of dealing in and with cattle and was entirely unrelated to his operations as a registered livestock dealer.

Judge Graven, who tried this case, wrote an exhaustive opinion, reported in 130 F.Supp. 930, in which the evidentiary facts are stated in complete detail and the applicable law is elaborately discussed. No useful purpose can be served by repeating, paraphrasing or attempting to supplement what has been adequately and accurately said by the trial judge. However, we quote the following from his opinion, at page 944 of 130 F.Supp..

"The records and supporting data for the 'special account' for the year 1952 were records relating to a business activity directed by the respondent [Woerth] from the same office in which he directed his activities as a registered dealer. Those records and data had to do with cattle which the respondent acquired in his activities as such dealer and were closely related thereto. Those records could explain and throw light on his activities as such dealer. The respondent's contention that the subpoena duces tecum in question constitutes an attempt on the part of the Secretary of Agriculture to extend his administrative authority to an 'unposted' stockyard would not seem to be well founded. Under the provisions of the Act and the regulations promulgated thereunder, it was the duty of the respondent as a registered dealer under the Act to keep records which clearly and adequately showed the disposition of cattle purchased by him as such dealer. A book entry transferring such cattle from himself to himself is not such a record as clearly and adequately shows the disposition made of them. The Secretary of Agriculture acquired administrative jurisdiction as to the cattle in question when they arrived at the Sioux City Stockyards. He acquired administrative jurisdiction as to the respondent's activities in connection with them when the respondent purchased them. That jurisdiction was not and could not be divested simply by the making of entries reciting that they had been transferred to his 'special account.' It may be that the records requested pertain to transactions not within the scope of the Act and which are irrelevant to the investigation in question. However, the fact that the respondent may have intermingled irrelevant information in the records in question cannot serve to defeat the right of the Secretary of Agriculture to examine those records as to transactions which had their origin in the activities of the respondent as a registered dealer. The subpoena duces tecum in question is not couched in broad and sweeping language. It does not call for indefinite records or a mass of records. It is very specific and lim-

ited in its terms. The production of the records called for by the subpoena duces tecum would not disrupt or interfere with the respondent's business activities or place an undue burden on him or cause hardship to him. The investigation in question is one authorized by Congress. It is for a purpose within the power of Congress to authorize. The subpoena duces tecum in question was issued for the purpose of making such an investigation and calls for the production of records which are apparently relevant thereto."

We are of the opinon that the conclusion reached by the District Court is in harmony with rulings in, and with implications reasonably to be drawn from, cases involving like questions. See and compare, Endicott Johnson Corp. v. Perkins, 317 U.S. 501, 509, 63 S.Ct. 339, 87 L.Ed. 424; Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 214–218, 66 S.Ct. 494, 90 L.Ed. 614; President of United States v. Skeen, 5 Cir., 118 F.2d 58; Cudahy Packing Co. v. Fleming, 8 Cir., 122 F.2d 1005, 1008–1009, reversed on another ground, sub nom. Cudahy Packing Co. v. Holland, 315 U.S. 785, 62 S.Ct. 803, 86 L.Ed. 1191; Application of Holland, D.C.S.D.N.Y., 44 F.Supp. 601, affirmed per curiam, sub nom. Walling v. Standard Dredging Corp., 2 Cir., 132 F.2d 322; Walling v. Martin Typewriter Co., D.C.Me., 48 F.Supp. 751, affirmed per curiam Martin Typewriter Co. v. Walling, 1 Cir., 135 F.2d 918; Walling v. Benson, 8 Cir., 137 F.2d 501, 504–506, 149 A.L.R. 186; United States v. C. & V. Poultry, Inc., D.C.E.D.N.Y., 132 F.Supp. 945, 947.

The case last cited, which was decided by Judge Galston on June 2, 1955, differs in no controlling respect from the instant case. He ordered the enforcement of an investigatory subpoena issued by an Assistant Secretary of Agriculture, and stated that "The same question was carefully considered in United States v. Woerth, D.C.N.D.Iowa, 130 F.Supp. 930 by Judge Graven."

The District Court, we think, correctly decided that the Government was entitled to the enforcement of the subpoena duces tecum. The order appealed from is affirmed.