SMALL BUSINESS ADMINISTRATION, Petitioner,

v.

Lewis W. BARRON, Respondent.

SMALL BUSINESS ADMINISTRATION, Petitioner,

v.

Robert B. KAY, Respondent.

SMALL BUSINESS ADMINISTRATION, Petitioner,

v.

Merle S. LONG, Respondent.

Civ. A. Nos. 4771, 4772 and 4921.

United States District Court
W. D. South Carolina,
Greenville Division.

Heard March 9, 1965.

Decided March 31, 1965.

**436**

Philip F. Zeidman, Gen. Counsel, Roger L. Campbell, Asst. Gen. Counsel, Charles Barth, Asst. Gen. Counsel, Small Business Administration, Washington, D. C., and Ernest J. Howard, Asst. U. S. Atty., Greenville, S. C., for petitioner.

I. H. Wachtel, Wachtel, Wiener & Schlezinger, Washington, D. C., and Robert B. Kay, Greenville, S. C., for respondents.

HEMPHILL, District Judge.

Petitioner has applied to this Court for enforcement of certain subpoenas duces tecum issued during the course of an investigation pursuant to Section 310 of the Small Business Investment Act of 1958, as amended, 15 U.S.C. § 687b.

Respondents opposed the enforcement on grounds of breadth, relevance and materiality of the subpoenas; that compliance therewith would constitute an unreasonable search and seizure; that, with respect to Respondent Barron, compliance would violate the privilege against self-incrimination; and that, with respect to Respondent Kay, an attorney, compliance would violate an attorney-client relationship.

To fully understand the problems involved herein, the nature of the Small Business Investment program should be considered. Congress enacted the Small Business Investment Act in 1958 (P.L. 85–699, 15 U.S.C. § 661 et seq.) to provide an additional source of long term equity capital and long term loans for small business concerns. That Act authorizes the Small Business Administration to license, regulate and lend money to small business investment companies which in turn would make equity investments in, and long term loans to, small business concerns for the purpose of providing those cencerns with funds for growth, expansion and modernization.

It soon became apparent to Congress that reasonable and intelligent administration of the program and regulation of the industry required that the Small Business Administration be empowered to gather information concerning the operation of its licensed small bsuiness investment companies. In the course of gathering such information, the Administration was authorized to make proper inquiry, not only into the affairs of its licensed small business investment companies, but also to obtain information from any other persons with information relevant to the inquiry. Therefore, Congress amended the Act in 1961 [P.L. 86–502], authorizing, among other things, the Small Business Administration to gather information necessary to administer the program and regulate the industry. In order to obtain information the Small Business Administration was authorized to conduct investigations and to subpoena witnesses and the production of books, papers and documents. Section 310 of the Act, 15 U.S.C. § 687b, provides as follows:

"Sec. 310. The Administration may make such investigations as it deems necessary to determine whether a licensee or any other person has engaged or is about to engage in any acts or practices which constitute or will constitute a violation of any provision of this Act, or of any rule or regulation under this Act, or of any order issued under this Act. The Administration shall permit any person to file with it a statement in writing, under oath or otherwise as the Administration shall determine, as to all the facts and circumstances concerning the matter to be investigated. For the purpose of any investigation, the Administration is empowered to administer oaths and

affirmations, subpoena witnesses, compel their attendance, take evidence, and require the production of any books, papers, and documents which are relevant to the inquiry. Such attendance of witnesses and the production of any such records may be required from any place in the United States. In case of contumacy by, or refusal to obey a subpoena issued to, any person, including a licensee, the Administration may invoke the aid of any court of the United States within the jurisdiction of which such investigation or proceeding is carried on, or where such person resides or carries on business, in requiring the attendance and testimony of witnesses and the production of books, papers, and documents; and such court may issue an order requiring such person to appear before the Administration, there to produce records, if so ordered, or to give testimony touching the matter under investigation. Any failure to obey such order of the court may be punished by such court as a contempt thereof. All process in any such case may be served in the judicial district whereof such person is an inhabitant or wherever he may be found."

On December 3, 1963, the Small Business Administration issued an Order Directing Investigation pursuant to § 310 of the Act, to determine whether certain small business investment companies named in the Order, or other persons, had engaged in or were about to engage in any acts or practices which constituted or would constitute a violation of any provision of the Act or of the Administration's Rules or Regulations adopted thereunder. The Order Directing Investigation included 18 designated small business investment companies, their principals or other persons and designated Stanley M. Levy, and others, as officers of the Administration and empowered each of them to administer oaths and affirmations, subpoena witnesses, compel their attendance, take evidence

and require the production of any books, papers, correspondence, memoranda or other records deemed relevant and material to the inquiry, and to perform all other duties in connection therewith as prescribed by law. The Order was variously amended, and reads as of May 8, 1964, as follows:

"UNITED STATES OF AMERICA
Before The
SMALL BUSINESS ADMINIS-
TRATION
In the Matter of
Catawba Capital Corp.
04–0033
Confederate Capital Corp.
04–0028
Eastern Capital Corp.
04–0066
Empire Capital Corp.
04–0022
First Carolina Fund
04–0058
First Financial Corp.
05–0013
Florida Equity Investments, Inc.
05–0032
Granite Capital Corp.
04–0035
Maritime Investment Corp.
05–0079
Merchants Investment Corp.
04–0014
Mutual Capital Corp.
05–0078
Pinnacle Investment Corp.
04–0024
Southern Growth Industries, Inc.
04–0018

"I.

"The Administration's official files disclose that examination and reports of the titled Licensees set forth various activities of these companies, some of which may be collusive, and which appear to be in violation of the Small Business Investment Act of

1958, as amended, (hereinafter called the Act), and the Regulations promulgated thereunder.

## "II.

"Information available to the Administration indicates that the titled Licensees invested in small business concerns in which principals of other titled Licensees had a financial interest.

"Information available to the Administration indicates that the investments of titled Licensees are so interwoven with other financial interests of principals of the titled Licensees as to indicate a pattern of self-dealing and collusion in violation of the Act and Regulations.

"Information available to the Administration indicates that some principals of the titled Licensee may have obtained funds from other titled Licensees which they in turn utilized as initial paid-in capital in obtaining a license.

"Information available to the Administration indicates that the principals of the titled Licensees in their obtaining of a license may have acted in concert with and upon the advice and suggestion of others in a manner as to circumvent and violate the requirements for obtaining a license as set forth in the Act and Regulations.

"Information available to the Administration indicates that the titled Licensees and the principals thereof in conducting the affairs of the titled Licensees may have acted in concert with and upon the advice and suggestion of others in such a manner as to circumvent and violate the Act and Regulations.

## "III.

"The information available to the Administration, if true, tends to show that the titled Licensee and principals thereof violated the provisions of Sections 301(a), 302(a), 303 (a) and (b), 304(a), and 305(a) and (b) of the Act and Sections 107.102 (d), 107.104(d), (e), (j) and (n), 107.202(c), 107.301(b), 107.501(a), 107.601(a), 107.704(a) and 107.716 (a), (b) and (c) of the Regulations promulgated thereunder.

## "IV.

"The Administration, having considered the aforementioned Examination Reports and other reports of Licensee's activities, and for the purpose of (1) determining whether Licensees have violated the Small Business Investment Act of 1958, as amended, and Regulations thereunder; and (2) aiding in the enforcement of said Act, deems it necessary and appropriate that an investigation be made, as provided for by Section 310 of the Small Business Investment Act of 1958, as amended.

"It is ordered pursuant to the provision of Section 310 of the Small Business Investment Act of 1958, as amended, that an investigation be made to determine the matters as set forth in Section II hereof.

"IT IS FURTHER ORDERED, pursuant to the provisions of Section 310 of the Small Business Investment Act of 1958, as amended, that for the purposes of such investigation, Stanley M. Levy, Jack J. Schutz and Omar Valldejuli are each hereby designated as officers of this Administration and each is empowered to administer oaths and affirmations, subpoena witnesses, compel their attendance, take evidence and require the production of any books, papers, correspondence, memoranda or other records deemed relevant and material to the inquiry, and to perform all other duties in connection thereof as prescribed by law."

Pursuant to the Order, Officer Levy issued subpoenas to Lewis W. Barron and Robert B. Kay on March 2, 1964, to appear and give testimony in Washington, D. C., on March 24, 1964. Barron and Kay appeared on the aforesaid date and testified under oath. Prior to giving

testimony, Mr. Levy showed the Order to Messrs. Barron and Kay. Mr. Levy cautioned both Barron and Kay as follows:

"The witnesses are advised that the facts developed in this investigation might constitute violations of other federal statutes as well as the ones just mentioned (Small Business Investment Act, as amended), and under the Administration's practice they are permitted to be represented by an attorney and that any evidence they may give may be used against them, and that they may refuse to give any testimony which may tend to incriminate or degrade them or subject them to a fine, penalty, and forfeiture, and that the testimony which they will give before this proceeding will be under oath; that a transcript will be made of this proceeding and that they will have a right, if they desire, to purchase a copy of that transcript."

At the March 24, 1964, investigative hearing both Barron and Kay testified as to their personal financial transactions and ownership interests in small business investment companies named in the Order and testified as to their personal financial transactions and ownership interests in small business concerns which were borrowers from small business investment companies named in the Order.

As a result of the March 24, 1964, hearing and in conjunction with other data furnished to the Administration, the Small Business Administration determined to continue its investigation by examining the books and records of those concerns which had borrowed from the small business investment companies; by examining the books and records of the named small business investment companies, and by examining the personal financial records of Barron and Kay insofar as those records related to financial transactions with and stock ownership interests in small business investment companies and small business concerns which received financing from small business investment companies.

Small Business Administration investigators went to Greenville, South Carolina during the second week of May 1964, to examine various books and records of companies located there pursuant to subpoenas returnable at Greenville. Examination was refused. Those subpoenas do not form a part of these suits.

Thereafter on June 12, 1964, Officer Levy issued five subpoenas duces tecum to Lewis W. Barron which are subjects of these proceedings. Respondent Barron was, or had been a principal or advisor of several of the investment companies named in the Order and a principal and advisor of several concerns which received financing from investment companies. The subpoenas were returnable on July 6, 1964, at Washington, D. C., and required the production of books, records and documents of both Respondent Barron, of a small business investment company under his control, and certain related companies under his control which had borrowed from small business investment companies. The subpoenas were personally served on Barron, on June 19, 1964. Subpoenas designated "Barron A" called for certain of Lewis W. Barron's personal financial records and stock certificates evidencing his interest directly or indirectly in small business investment companies and in concerns which obtained financing from them; subpoena "Barron B" called for the books and records of Barron and Company, Inc., Barron and Company of Greenville, Inc., d/b/a Barron and Company; and Barron and Company; Subpoena "Barron C" called for the books and records of Fairview Corporation and Carolina Poultry Corporation; Subpoena "Barron D" called for the books and records of Southeastern Interstate Motor Hotel, Inc., and, Subpoena "Barron E" called for the books and records of Florida Equity Investments, Inc.

Respondent Barron had purchased substantial equity interests in Southern Growth Industries, Inc., Confederate Capital Corporation and Florida Equity Investments, Inc., all small business investment companies named in the Order.

Corporations owned or controlled by Lewis W. Barron have had numerous transactions with and received financing from at least four small business investment companies named in the Order.

Barron and Company of Greenville, Inc., was owned by Lewis W. Barron and borrowed $30,000 from First Carolina Fund and $45,000 from Empire Capital Corporation, both licensed small business investment companies. Barron and Company, a partnership was the predecessor to Barron and Company of Greenville, Inc., and consisted of Lewis W. Barron and Robert B. Kay as the partners.

Barron and Company, Inc., was owned by Lewis W. Barron and borrowed $60,000 from Maritime Investment Corporation, and $60,000 from Mutual Capital Corporation, both licensed small business investment companies. Barron and Company, Inc., was the chief underwriter for the public offering of stock of Southern Growth Industries, Inc., one of the small business investment companies named in the Order. Respondent Barron has possession and control of the books and records of Barron and Company of Greenville, Inc., Barron and Company, a partnership and Barron and Company, Inc.

Fairview Corporation assumed the debts of Barron and Company, Inc., to Mutual Capital Corporation and to Maritime Investment Corporation ($120,000). Barron owned 50% of the stock of Fairview and an employee of Lewis W. Barron owned the other 50% of Fairview's stock. The only asset of Fairview at the time it assumed the $120,000 debt of Barron and Company was a contract to sell eggs to Progresso-Inter-Americano and to purchase eggs from Carolina Poultry Company, companies with which Barron was affiliated. Barron has possession and control of the records of Carolina Poultry Company and Fairview Corporation.

Southeastern Interstate Motor Hotel, Inc., was owned by Lewis W. Barron and borrowed $25,000 from First Carolina Fund, a small business investment company. Barron has possession and control of the books and records of Southeastern Interstate Motor Hotels, Inc.

Florida Equity Investments, Inc., was owned and controlled by Lewis W. Barron and is a small business investment company named in the Order. Barron has possession and control of the books and records of Florida Equity Investments, Inc.

Also on June 12, 1964, Officer Levy issued two subpoenas duces tecum, to Robert B. Kay, which are subjects of these proceedings. Respondent Kay was, or had been a principal or advisor of several small business investment companies named in the Investigation Order, and a principal and advisor of several concerns which received financing from small business investment companies. The subpoenas were returnable on July 6, 1964, at Washington, D. C., and required the production of books, records and documents of Respondent Kay and of certain companies under his control which had borrowed from small business investment companies. The subpoenas were personally served on Kay on June 19, 1964. Subpoena designated "Kay A" called for the books and records of Space, Inc., and Reedy River Realty, Inc. Subpoena "Kay B" called for certain personal financial records and stock certificates evidencing his interests in small business investment companies and in concerns which obtained financing from them.

Respondent Kay had equity interests in Confederate Capital Corporation and Southern Growth Industries, Inc. He had been an officer in small business concerns which have received financing from small business investment companies named in the Order.

Space, Inc., borrowed $60,000 from First Carolina Fund. Respondent Kay was secretary and counsel for Space, Inc., and the address of Space, Inc., was the address of his law office.

Robert B. Kay was the principal stockholder and president of Reedy River Realty, Inc., which had borrowed $34,450 from Empire Capital Corporation, a small business investment company. Kay has

possession and control of the books and records of Reedy River Realty, Inc.

On July 6, 1964, certain of the records of the Fairview Corporation were furnished to Petitioner.

Respondents have not complied with the subpoenas duces tecum, except for the books and records of Florida Equities Investment, Inc., and Fairview Corporation. Thereafter, on August 13, 1964, the Small Business Administration filed Applications for Enforcement of the Subpoenas.

Continuing the investigation, Officer Levy issued a subpoena duces tecum, on December 9, 1964, to Merle S. Long. Respondent Long was president and controlled the operations of Continental Roof Truss Corporation which borrowed $10,000 from Southern Growth Industries, Inc., $30,000 from Confederate Capital Corporation; $60,000 from Empire Capital Corporation; and, $60,000 from First Carolina Fund, all small business investment companies. Long has possession and control of the books and records of Continental Roof Truss Corporation. The subpoena was returnable on January 11, 1965, in Washington, D. C., and required the production of books and records of Continental Roof Truss Corporation. The subpoena was personally served on Respondent Long on January 4, 1965. The return date was extended at the request of Respondent's attorney, Robert B. Kay, to February 1, 1965.

Respondent Long has made no effort to comply with the subpoena. Instead his attorney, Robert B. Kay, served the Small Business Administration on February 1, 1965, the extended return date, with a Motion to Quash the Subpoena. That Motion to Quash the Subpoena was dismissed by this Court on February 15, 1965. Thereafter, the Small Business Administration applied to this Court for Enforcement of the Subpoena issued to Merle S. Long.

Respondents Barron and Kay jointly filed an Opposition to Petitioner's Application.

Respondent Barron opposed the enforcement of the administrative subpoena for his personal books and records on the following grounds:

(1) the subpoena was too broad;

(2) relevance and materiality not proven by the Small Business Administration;

(3) enforcement would constitute unreasonable search and seizure;

(4) enforcement would violate his privilege against self-incrimination guaranteed by the Fifth Amendment;

and opposed enforcement of the other subpoenas, calling for records of business concern, upon the following grounds:

(1) the subpoenas were too broad;

(2) relevance and materiality not proven; and,

(3) compliance would be unduly burdensome and oppressive.

Respondent Kay opposed enforcement of the administrative subpoena for his personal books and records on the following grounds:

(1) the subpoena was too broad;

(2) relevance and materiality not proven by the Small Business Administration;

(3) enforcement would constitute an unreasonable search and seizure;

(4) enforcement would violate the privilege of the attorney-client relationship,

and opposed enforcement of the subpoena calling for records of business concerns upon the following grounds:

(1) the subpoena was too broad and oppressive;

(2) relevance of material sought was not proven by the Small Business Administration;

(3) compliance would be unduly burdensome.

Respondent Long filed an Opposition to Petitioner's Application, opposing en-

forcement of the administrative subpoena on the following grounds:

(1) the subpoena was too broad; and

(2) the relevancy of the material sought was not proven by the Small Business Administration.

A hearing on the three applications to enforce the subpoenas was held at Rock Hill, S. C., March 9, 1965, at which all parties appeared and full argument was made. Respondents offered no evidence in support of their defenses that enforcement of the subpoenas would be unreasonably burdensome upon them, nor did they introduce any evidence to prove that they could not comply with the subpoenas, though it is obvious that it would be more than an "inconvenience." Essentially the allegations of the Small Business Administration are uncontroverted.

Rather than offer evidence in support of their opposition to enforcement of the subpoenas, Respondents argued that the Small Business Administration should have charged the Respondents with a specific violation of the Act and that the Small Business Administration by issuing the subpoenas was engaged in tyrannizing and oppressing honest businessmen. The Respondents failed to understand the nature of the Government's investigation. Under Section 310 of the Small Business Investment Act, as amended, the Administration is authorized to investigate to determine whether there have been violations, or whether violations of the Act and the lawful regulations promulgated thereunder, are threatened. The object of the investigation, of which these subpoenas form a part, is not to charge violations of the Act or Regulations but rather to determine whether, as a matter of fact, the Act or Regulations have been or threaten to be violated.

■ Section 102 of the Act (15 U.S.C. § 661) sets forth as the policy of the Congress that small business investment companies shall provide funds to small business concerns as needed for their sound financing, growth, expansion and modernization. Sections 304 and 305 of the Act (15 U.S.C. §§ 684, 685) permit small business investment companies to finance small business concerns only for the above stated purposes. Without inspecting the books and records of those who borrow from small business investment companies, the Small Business Administration would be unable to determine whether those funds were used for sound financing, growth, modernization and expansion of the small business concerns as required by the Act. Of course, there must be a substantial "nexus" between the small business and the borrower, because mere minimal contact as a basis for invoking the subpoena power against a borrower is not enough.

Law is not a static unchanging set of rules, but rather a reflection of prevailing social and political mores. In few areas has the law changed as abruptly and completely as it has in the field of subpoenas issued for the purpose of compelling testimony or the production of materials for the purpose of enabling a federal administrative agency to investigate. For many years the law was as enunciated by Mr. Justice Holmes in Federal Trade Commission v. American Tobacco Company, 264 U.S. 298, 44 S.Ct. 336, 68 L.Ed. 696. The Federal Trade Commission had been authorized by a Senate Resolution to investigate and to report facts relating to possible antitrust violations in the cigarette manufacturing industry. An investigation was commenced by the Federal Trade Commission and subpoenas were served on manufacturing companies calling for the production of all records, contracts, and memoranda of the companies, and for material related to the company's salesmen, their jobbers, customers, and certain wholesale grocers' association. The Supreme Court in a unanimous opinion, in 1924, declined to grant enforcement of the subpoenas holding, essentially, that they were too broad in scope. Keeping in mind the size and age of such companies as American Tobacco it is clear that the subpoenas required the production and inspection of a tremendous quantity of physical material.

Even more important than the actual holding in American Tobacco that the subpoenas were too broad, is that the Supreme Court indicated that it would not sustain investigative subpoenas whose purpose was the disclosure of information which would permit a federal agency to determine whether violations of acts or regulations had been perpetrated. This is essentially the import of American Tobacco. Note the following language from the opinion at pp. 305 and 306, 44 S.Ct. at p. 337:

"Anyone who respects the spirit as' well as the letter of the Fourth Amendment would be loath to believe that Congress intended to authorize one of its subordinate agencies to sweep all our traditions into the fire * * * and to direct fishing expeditions into private papers on the possibility that they may disclose evidence of crime. * * * It is contrary to the first principles of justice to allow a search through all the respondents' records, relevant or irrelevant, in the hope that something will turn up."

In Endicott Johnson Corporation v. Perkins, 317 U.S. 501, 63 S.Ct. 339, 87 L.Ed. 424 the Supreme Court issued the first of a number of opinions which altered the status of the law in the field of enforcement of administrative subpoenas issued during the course of an investigation. Secretary of Labor Perkins under the Walsh-Healey Act had the authority to make investigations and to require the production of records. Subpoenas were issued calling for records relating to payrolls in various Endicott Johnson plants. Compliance was refused and Secretary Perkins applied to the District Court for enforcement. The District Court denied the Secretary's Motion for Enforcement based upon the pleading and accompanying affidavits and set the case down for trial as to whether the material sought was properly subject to the provisions of the Walsh-Healey Act. The District Court then refused to enforce the subpoenas. The Court of Appeals for the Second Circuit reversed and the Supreme Court affirmed the decision of the Court of Appeals. The Supreme Court, by Justice Jackson, held that the District Court was without authority to decide the question of coverage. The Court further held:

"On the admitted facts of the case the District Court had no authority to control her procedure or to condition enforcement of her subpoenas upon her first reaching and announcing a decision of some of the issues in her administrative proceeding.

"Nor was the District Court authorized to decide the question of coverage itself. The evidence sought by the subpoena was not plainly incompetent or irrelevant to any lawful purpose of the Secretary in the discharge of her duties 'under the Act, and it was the duty of the District Court to order its production for the Secretary's consideration." (317 U.S. 501, at 509, 63 S.Ct. 339, at 343).

After the decision in the Endicott Johnson case, confusion developed as to whether the propositions there announced were limited solely to the administration of the Walsh-Healey Act or whether they represented a change in the general law relating to the enforcement of administrative subpoenas issued for the purpose of investigation. This issue was settled by the Supreme Court in 1946 in Oklahoma Press Publishing Company v. Walling, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614, which involved the validity of a Court Order directing a newspaper company to comply with a subpoena duces tecum issued by the Administrator of the Wage and Hour Division of the Department of Labor. The subpoena was issued for the purpose of ascertaining whether the activities of the newspaper company were such as to bring it within the scope of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. The Supreme Court in upholding the enforceability of the subpoena duces tecum stated, at page 214, 66 S.Ct. at page 508:

"We think, therefore, that the Courts of Appeals were correct in the view that Congress has authorized the Ad-

ministrator, rather than the District Courts in the first instance, to determine the question of coverage in the preliminary investigation of possible existing violations; in doing so to exercise his subpoena power for securing evidence upon that question, by seeking the production of petitioners' relevant books, records and papers; and, in case of refusal to obey his subpoena, issued according to the statute's authorization, to have the aid of the District Court in enforcing it. No constitutional provision forbids Congress to do this.
\* \* \* "

That Court further stated, at page 216, 66 S.Ct. at page 509:

"The result therefore sustains the Administrator's position that his investigative function, in searching out violations with a view to securing enforcement of the Act, is essentially the same as the grand jury's or the court's in issuing other pretrial orders for the discovery of evidence, and is governed by the same limitations. These are that he shall not act arbitrarily or in excess of his statutory authority, but this does not mean that his inquiry must be 'limited \* \* \* by \* \* \* forecasts of the probable result of the investigation \* \* \*.' "

In summary, the Oklahoma Press case seems to have held that the Fourth Amendment if it is at all applicable at the most, only guards against abuse by way of too much indefiniteness or breadth in the things required to be described. The gravamen of the protection offered by the Fourth Amendment is that the disclosure sought shall not be unreasonable. Any requirement in the nature of probable cause is satisfied where the investigation is authorized by Congress, for a purpose Congress can order, and by the documents sought being relevant to the inquiry.

This position of the Supreme Court was substantially enlarged upon and elaborated in United States v. Morton Salt Company, 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401. There, Justice Jackson for a 7–0 majority reviewed the history, in part, of the enforcement of the administrative subpoenas and held at pages 642 and 643, 70 S.Ct. at pages 363 and 364:

"We must not disguise the fact that sometimes, especially early in the history of the federal administrative tribunal, the courts were persuaded to engraft judicial limitations upon the administrative process. The courts could not go fishing, and so it followed neither could anyone else. Administrative investigations fell before the colorful and nostalgic slogan 'no fishing expeditions.' It must not be forgotten that the administrative process and its agencies are relative newcomers in the field of law and that it has taken and will continue to take experience and trial and error to fit this process into our system of judicature. More recent views have been more tolerant of it than those which underlay many older decisions. [Citation omitted]

"The only power that is involved here is the power to get information from those who best can give it and who are most interested in not doing so. Because judicial power is reluctant if not unable to summon evidence until it is shown to be relevant to issues in litigation, it does not follow that an administrative agency charged with seeing that the laws are enforced may not have and exercise powers of original inquiry. It has a power of inquisition, if one chooses to call it that, which is not derived from the judicial function. It is more analogous to the Grand Jury, which does not depend on a case or controversy for power to get evidence but can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not. When investigative and accusatory duties are delegated by statute to an administrative body, it, too, may take steps to inform itself as to

whether there is probable violation of the law."

At pages 652 and 653, 70 S.Ct. at page 369 he continued:

"Of course a governmental investigation into corporate matters may be of such a sweeping nature and so unrelated to the matter properly under inquiry as to exceed the investigatory power. Federal Trade Comm. v. American Tobacco Co., supra. But. it is sufficient if the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant. 'The gist of the protection is in the requirement, expressed in terms, that the disclosure sought shall not be unreasonable.' Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 208 [66 S.Ct. 494, 90 L.Ed. 614]."

In the recent case of United States v. Powell, 379 U.S. 48, 57, 85 S.Ct. 248, 13 L.Ed.2d 112, the Supreme Court affirmed the Oklahoma Press and Morton Salt decisions and quoted passages therefrom analogizing that investigative functions are similar to that of a grand jury and that investigations may be sustained upon suspicion that the law has been violated or upon the grounds that the administrative agency wants assurances that the law is not being violated. Also in accord is Ryan v. United States, 379 U.S. 61, 85 S.Ct. 232, 13 L.Ed.2d 122. Note the excellent discussion in I Davis, Admin. Law § 3.12 (1958).

The case of Civil Aeronautics Board v. Hermann, 353 U.S. 322, 77 S.Ct. 804, 1 L.Ed.2d 852, reversing 237 F.2d 359 (9th Cir. 1956) illustrates the requirements for enforcement of administrative subpoenas by a District Court enforcing the subpoenas in question, pointing out in its opinion that the District Court had not considered and decided necessary issues, including whether the subpoenaed documents were in possession of the persons to whom the subpoenas were issued; whether the subpoenaed documents were sufficiently defined, whether the demand was oppressive and unreasonable; and

whether the privacy of third parties had been invaded. The case was ordered remanded to the District Court to make determination on these issues. However, the Circuit Court decision was reversed by the Supreme Court in a 2-page per curiam decision which ordered the District Court's decision reinstated, citing Brown v. United States, 276 U.S. 134, 142–143, 48 S.Ct. 288, 72 L.Ed. 500 (1928), Oklahoma Press Pub. Co. v. Walling, supra, and Endicott Johnson Corp. v. Perkins, supra, 317 U.S. at 509, 63 S. Ct. at 343. The effect of this decision by the Supreme Court is to make the requirements set out by the Court of Appeals improper.

The Hermann procedure and law was followed in Foster v. United States, 265 F.2d 183 (2nd Cir. 1959), cert. den. 360 U.S. 912, 79 S.Ct. 1297, 3 L.Ed.2d 1261. There the Commissioner of Internal Revenue obtained an ex parte order enforcing a summons. The Court held:

"The simple uncontroverted allegations of fact in the agent's affidavit, as summarized in the foregoing text of this opinion, were enough, we hold, to support the order below. They showed that the inspection sought was in aid of an investigation properly authorized by Congress by § 7602 of the Internal Revenue Code of 1954. Not even the respondent itself suggested that compliance with the order would be unreasonably onerous. And surely the records sought were material and relevant to the investigation. That the foregoing considerations constitute the criteria for judicial enforcement of subpoenas issued by various administrative agencies is well established: an affirmative showing of probable cause for the administrative inquiry is not required. Civil Aeronautics Board v. Hermann. [Numerous citations omitted].

\* \* \* \* \* \*

" \* \* \* [T]he test of materiality and relevance in this context is, of course, not whether the records sought, when disclosed, will or will

not contradict the taxpayer's tax returns. The test, we think, is essentially the same as that for materiality with respect to grand jury investigations. Wilson v. United States, supra [221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771]; United States v. Morton Salt Co., supra, 338 U.S. at page 642, 70 S.Ct. at page 363; Oklahoma Press Publishing Co. v. Walling, supra, 327 U.S. at page 216, 66 S.Ct. at page 509; Falsone v. United States, 5 Cir., 205 F.2d 734, certiorari denied 346 U.S. 864, 74 S.Ct. 103, 98 L.Ed. 375. It is whether the inspection sought 'might have thrown light upon' the correctness of the taxpayer's returns. See United States v. Siegel, 2 Cir., 263 F.2d 530." [265 F.2d at 186–187.]

In a slightly different vein was Bowles v. Northwest Poultry and Dairy Products Co., 153 F.2d 32 (9th Cir. 1946) where the Court enforced a subpoena issued by the Price Administrator based upon the pleadings. The Court held:

"Because of the well established presumption of regularity attending acts of administrative agencies, the mere fact that the Administrator issued an inspection requirement is sufficient to show that he deemed the information sought here necessary or proper to aid in the administration and enforcement of the Act and that he has not acted oppressively or undertaken to pursue investigations where no need therefor is apparent. * * * Appellee has failed either to rebut or overcome this presumption." [153 F.2d at 34]

In United States v. Woerth, 130 F. Supp. 930, 942 (N.D.Iowa 1955) aff. 231 F.2d 822 (8 Cir. 1956) the Court noted:

"Another requirement for an enforceable subpoena is that the information called for must be relevant. * * * [cases cited]. However, the agency's determination that the information is relevant is entitled to a *prima facie* stamp of correctness by the Courts.

In the three cases now at issue, the Respondents offered no evidence to rebut the regularity of the administrative subpoena issued by the Small Business Administration, nor did Respondents meet their burden of proving undue breadth, oppressiveness or undue burden. The party opposing enforcement of an administrative subpoena has the burden of proving the irregularity or unlawfulness of the subpoena. See Goldberg v. Truck Drivers Local, 293 F.2d 807 (6th Cir. 1961) where the Court of Appeals held:

"In the absence of proof to the contrary, there is a presumption of regularity in the proceedings of a public officer. The burden is upon the party complaining to show otherwise. * * * The trial judge commented on the fact that the Secretary did not offer any evidence to establish the reason or basis for the investigation. In our opinion, the Secretary was not required to do so. The statute was sufficient authority for him to proceed. The purpose of the investigation appeared on the face of the subpoenas. The Secretary could not very well perform his statutory duty and determine whether the Act was being violated or about to be violated without making an investigation. Requiring the Secretary to first establish a probable violation of the Act, as a condition precedent to making an investigation, effectively stripped him of his power to investigate and prevented him from determining whether the Act was being violated or about to be violated. It virtually rendered the enforcement provisions of the Act nugatory."

293 F.2d at 812. Also in accord with this view is Mississippi Road Supply Co. v. Walling, 136 F.2d 391 (5th Cir. 1943) which involved a subpoena enforcement proceeding brought under the Fair Labor Standards Act of 1936, 29 U.S.C. § 201 et seq. The Administrator issued a subpoena duces tecum for the production before examiners of the wage and hour

books of the company. The Company refused to produce the records on the ground that its employees were not engaged in commerce or the production of goods for commerce and that it is a retail and service establishment and exempt from the provisions of the Fair Labor Standards Act. The District Court issued an Order that the company show cause why it should not produce the records and from an Order directing compliance with the subpoena, the company appealed. In affirming the District Court, the Court of Appeals noted at page 394:

"The burden indeed of showing that the inquiry is unlawful is upon him who is called on to show cause why a subpoena should not be obeyed. The presumption of regularity of the proceedings of public officers so places the burden, unless on the face of the proceedings they are unlawful or oppressive."

The foregoing discussion is dispositive of the legal issues here presented, except for Respondent Barron's argument of privilege under the Fifth Amendment as to his personal papers and Respondent Kay's argument of privilege under the attorney-client relationship as to his personal papers. Before considering the latter two matters, however, the Court feels constrained to make further comments on the questions of unreasonable search and seizure and undue burden.

 The Respondents all argue that enforcement of the eight subpoenas will constitute an unreasonable search and seizure, from which they are protected by the Fourth Amendment to the Constitution.

As Justice Rutledge said in the Oklahoma Press case:

"The short answer to the Fourth Amendment objection is that the records in these cases present no question of actual search and seizure, but raise only the question whether orders of court for the production of specified records have been validly made; and no sufficient showing appears to justify setting them aside. [327 U.S. at 195, 66 S.Ct. at 498]

\* \* \* \* \* \*

"[T]he Fourth [Amendment], if applicable, at the most guards against abuse only by way of too much indefiniteness or breadth in the things required to be 'particularly described,' if also the inquiry is one the demanding agency is authorized by law to make and the materials specified are relevant." [1] [327 U.S. at 208, 66 S.Ct. at 505]

Respondents argue that the subpoenas are unduly burdensome and oppressive and that compliance would necessitate the devotion of considerable time and attention to satisfy the subpoenas. In Adams v. F.T.C., 296 F.2d 861 (8th Cir. 1961), cert. den. 369 U.S. 864, 82 S.Ct. 1029, 8 L.Ed.2d 83, the Federal Trade Commission was requesting enforcement of a subpoena requiring business records and internal policy memoranda of Kroger, Safeway, A & P, and others from January 1, 1940, to September 24, 1959. These subpoenas covered numerous business records and required the production of internal policy memoranda as well. The Court of Appeals for the 8th Circuit conceded the extreme broadness and burden of the subpoenas but refused to disturb the determination of the Federal Trade Commission that such information was relevant to the matter under consideration. The Court expressed the view that broadness and burden alone are insufficient justification to refuse enforcement of an administrative subpoena as long as the material sought is *relevant*.

The mere unsubstantiated allegations of undue burden by Respondents in the instant cases is not legally persuasive.

 Respondent Kay alleges that enforcement of the subpoenas would impinge upon the sanctity of the attorney-

---

1. It is recognized that here the Court was speaking of corporate records. Cf. United States v. Darby, 312 U.S. 100, 125, 61 S.Ct. 451, 85 L.Ed. 609; Shapiro v. United States, 335 U.S. 1, 22–24, 32, 68 S.Ct. 1375, 92 L.Ed. 1787.

client relationship, and in support thereof cites the following cases: Littleton v. Kincaid, 179 F.2d 848, 27 A.L.R.2d 572 (4th Cir. 1950); Cassem v. Heustis, 201 Ill. 208, 66 N.E. 283 (1903); Donaldson v. Eaton & Estes, 136 Iowa 650, 114 N.W. 19, 14 L.R.A.,N.S., 1168 (1907); Baker v. Otto, 180 Md. 53, 22 A.2d 924 (1941); Bruce's Ex'x v. Bibb's Ex'x, 129 Va. 45, 105 S.E. 570 (1921); Hoffman v. Hogan, 345 Mo. 903, 137 S.W.2d 441 (1940) and Peirce v. Palmer, 31 R.I. 432, 77 A. 201 (1910). The cases relied upon by Respondent Kay do not support his contention.

Judge Wyzanski has described the attorney-client privilege in clear terms in United States v. United Shoe Mach. Corp., 89 F.Supp. 357, 358–359 (D.C. Mass.1950). His authoritative statement concerning the invocation of the attorney-client privilege is as follows:

> "(1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client."

The Court of Appeals for the Second Circuit, in commenting upon the ability to invoke the privilege, stated in United States v. Kovel, 296 F.2d 918, 922 (1961):

> "What is vital to the privilege is that the communication be made in confidence for the purpose of obtaining legal advice from the lawyer."

It is, of course, fundamental to proper assertion of the privilege that the material sought was itself in the original instance privileged material. The Petitioner has not subpoenaed memoranda of legal advice from Respondent Kay, but rather the personal financial records of Robert B. Kay and stock certificates evidencing his interest in small business investment companies and in corporate small business concerns which have obtained financing from small business investment companies. In In re Wasserman, 198 F.Supp. 564 (1961), the District Court for the District of Columbia held that the attorney-client privilege does not cover the amount nor dates for the payment of fees for legal services. In Colton v. United States, 306 F.2d 633 (2nd Cir. 1962), the Court of Appeals required an attorney to answer questions posed by the Internal Revenue Service as to his years of retainer, the general nature of his services, and he was also required to produce documents and to answer questions as to documents in his possession. The Court held that the privilege extended only to those matters communicated in professional confidence and that the identity of the client was not such a matter. None of the subpoenas issued by the Small Business Administration to Respondent Kay call for the production of professional legal advice which he gave as a lawyer to his clients. None of the material subpoenaed by the Small Business Administration from Respondent Kay is privileged by the lawyer-client relationship in that none of the requested material consists of legal advice or assistance given by a lawyer to his client.

Respondent Barron argues that compelling him to produce his personal books and records relating to financial transactions with, and stock ownership in, small business investment companies and small business concerns which have borrowed from them would violate his privilege against self-incrimination.

■ The right of a citizen to refrain from giving evidence which might tend to incriminate him is so well recognized as to require no citations of law. It is equally well established that a citizen who testifies as to given matters in the

course of a proceeding waives the protection of the privilege against self-incrimination as to all further questions covering the area of such testimony in the same proceeding. Brown v. United States, 356 U.S. 148, 78 S.Ct. 622, 2 L.Ed. 2d 589; Johnson v. United States, 318 U.S. 189, 63 S.Ct. 549, 87 L.Ed. 1164; Raffel v. United States, 271 U.S. 494, 46 S.Ct. 566, 70 L.Ed. 1054; Rogers v. United States, 340 U.S. 367, 371, 71 S.Ct. 438, 95 L.Ed. 344 (1951). See generally 72 A.L.R.2d 818; 58 Am. Jur. Witness §§ 94–98; Orfield, The Privilege Against Self Incrimination in Federal Cases, 25 U.Pit.Law Rev. 503, at 545 ff; 4 S.C.L.Q. 443; and 37 Va.L.Rev. 629.

As noted above, Officer Levy fully apprised Respondent Barron at the March 24, 1964, proceeding that he could avail himself of the privilege against self-incrimination. After being so advised, and being represented at that proceeding by able counsel, Respondent Barron testified voluntarily concerning his personal financial transactions with and stock ownership interests in various small business investment companies and business concerns which were borrowers thereof. Having so testified, this Court concludes that he has waived his privilege against self-incrimination in the Investigation and may not now claim the privilege as to the same matters about which he testified. Therefore, Respondent Barron may not now refuse to comply with subpoenas for his books and records which are, in substance and legal effect, no more than written evidence supporting his previous oral testimony under oath.

Now therefore, it is hereby ordered, adjudged and decreed, that:

Respondent Lewis W. Barron appear before the Small Business Administration at 811 Vermont Avenue, N. W., Washington, D. C., or before an officer properly designated by it on April 14, 1965, and testify and produce for inspection, examination and copying by the Small Business Administration his personal financial books and records for the period January 1, 1960, to date relating to his personal financial transactions with and stock ownership in, small business investment companies and business concerns which have borrowed therefrom; and, the books and records of Barron and Co., Inc.; Barron and Co. of Greenville, Inc., d/b/a Barron and Co.; Barron and Co., a partnership; Fairview Corporation; Carolina Poultry Corporation or Company; and Southeastern Interstate Motor Motels, Inc., as required by the administrative subpoenas dated June 12, 1964 issued by the Small Business Administration which subpoenas are subjects of these civil proceedings.

Respondent Robert B. Kay appear before the Small Business Administration at 811 Vermont Avenue, N. W., Washington, D. C., or before an officer properly designated by it on April 14, 1965, and testify and produce for inspection, examination and copying by the Small Business Administration his personal books and records for the period January 1, 1960, to date relating to his personal financial transactions with, and stock ownership interest in, small business investment companies and business concerns which have borrowed therefrom, and the books and records of Space, Inc., and Reedy River Realty, Inc., as required by the administrative subpoenas, dated June 12, 1964 issued by the Small Business Administration, which subpoenas are subjects of these civil proceedings.

Respondent Merle S. Long appear before the Small Business Administration at 811 Vermont Avenue, N. W., Washington, D. C., or before an officer properly designated by it on April 14, 1965, and testify and produce for inspection and examination by the Small Business Administration the books and records of Continental Roof Truss Corporation for the period January 1, 1960 to date, as required by the administrative subpoena dated December 9, 1964 issued by the Small Business Administration, which subpoena is a subject of these civil proceedings.

Robert B. Kay, Lewis W. Barron, and Merle S. Long, and each of them and their agents, employees and attorneys,

are hereby enjoined and restrained from directly or indirectly taking or initiating any actions whatsoever to destroy, mutilate, remove or otherwise dispose of any of the documents, papers, or materials that this Court has ordered them to produce for the inspection and examination of the Small Business Administration.

And it is so ordered.